| | |
|---|---|
| DISTRICT COURT<br><br>CITY AND COUNTY OF DENVER, COLORADO<br><br>Denver City & County Building<br>Clerk of the Court, Civil Division<br>1437 Bannock St., Room 256<br>Denver, CO 80202 | |
| Plaintiff:     Q ADVISORS LLC<br><br>v.<br><br>Defendants:   MERGENCE CORPORATION and<br>               JASON S. ELLIS | ▲ COURT USE ONLY ▲ |
| John S. Phillips #24884<br>Sean C. Grimsley #36422<br><br>BARTLIT BECK HERMAN PALENCHAR &<br>  SCOTT LLP<br>1899 Wynkoop Street, 8th Floor<br>Denver, CO 80202<br><br>Telephone Number:  (303) 592-3100<br>Facsimile Number:  (303) 592-3140<br>Email:  john.phillips@bartlit-beck.com<br>        sean.grimsley@bartlit-beck.com | Case Number:<br><br>Div.:    Ctrm: |
| **COMPLAINT** | |

Plaintiff Q Advisors LLC ("Q Advisors"), for its Complaint against Mergence

Corporation ("Mergence") and Jason S. Ellis ("Ellis"), states as follows:

## Parties

1.     Q Advisors is a Colorado limited liability company headquartered in the City and

County of Denver, Colorado.  Q Advisors is an investment bank that specializes in assisting

companies with business transactions such as mergers and acquisitions, debt and equity

financings, and recapitalizations.

2.      Mergence is a Nevada corporation headquartered in Salt Lake City, Utah at 3939 South Wasatch Boulevard.  Mergence was formed on August 2, 2005 to provide "technical products and services offered in both retail and wholesale markets."  Until November 2013, Mergence directly or indirectly owned Spring Communications, Inc., which was known and did business variously as "Spring," "Spring Mobile," "Spring Retail Group," and "Spring Communications Holding."  Mergence referred to these Spring entities and its Spring Mobile business "Spring Retail Group."  Mergence also itself did business as "Spring Retail Group" at the same business address as the Spring entities at 3939 South Wasatch Boulevard in Salt Lake City.

3.      Jason S. Ellis is an individual whose principal residence is in Utah.  He is and has at all relevant times been President and Chief Executive Officer of Spring Mobile and numerous other Spring entities (such as Chief Executive Officer of Spring Retail Group, President of Spring Communications, Inc., President of Spring Communications Holding, Inc., and the like) and also President and Treasurer of Mergence.  According to sworn Nevada Secretary of State filings, Ellis is and always has been a member of the Board of Directors of Mergence since Mergence was incorporated on August 2, 2005.  Ellis is currently President and Chief Executive Officer of Spring Mobile, which (like Mergence) is located at 3939 South Wasatch Boulevard in Salt Lake City.

4.      Though not currently named as defendants, other individuals who are important to this action are Brett M. Bradshaw ("Bradshaw") and Vernon G. Dickman ("Dickman").  Both Bradshaw and Dickman have been members of the Board of Directors of Mergence since Mergence was incorporated on August 2, 2005.  Bradshaw is and has always served as Mergence's Secretary.  Bradshaw is also currently Senior Vice President of Sales and Operations

2

of Spring Mobile, which (like Mergence) is located at 3939 South Wasatch Boulevard in Salt

Lake City.  Dickman is the Founder of Spring Mobile and was, as of at least 2013, a Member of

the Board of Directors and Chairman of the Board of Spring Mobile and numerous other Spring

entities.

5.      On information and belief, each of Ellis, Bradshaw, and Dickman were and are

shareholders or beneficial owners of Mergence – Ellis (23.5%), Bradshaw (7.5%), and Dickman

(69%) – and each personally benefited from the sale of Spring in November 2013 and from the

breaches described below.

## Jurisdiction and Venue

6.      Plaintiff's claims arise under the contract attached to this Complaint as Exhibit A

(the "Contract") and common law.

7.      This Court has subject matter jurisdiction over this action pursuant to Article 6,

Section 9, of the Colorado Constitution.

8.      This Court has personal jurisdiction over the Defendants because Mergence,

Spring, and Ellis have had numerous, substantial contacts with the State of Colorado and the City

and County of Denver.  For example, between December 2012 and July 2013, Mergence, Spring,

and Ellis placed dozens of telephone calls and sent dozens of e-mails to Q Advisors at Q

Advisors' offices in the City and County of Denver.  These contacts related to the negotiation of

the Contract, the signing of the Contract, representations about Mergence's and Spring's

business activities, financial condition, and financing needs, communications with Fifth Third

bank representatives located in Denver, requests for services by Q Advisors to be provided in

Denver, and the actual provision of services in Denver by Q Advisors to Mergence and Spring

under the Contract.  Spring also substantial ongoing business operations through at least two retail locations located in the City of County of Denver today.

9.      Venue is proper in the City and County of Denver pursuant to C.R.C.P. 98(c) because, among other things, Mergence, Spring, and Ellis requested that Q Advisors perform the services in the City and County of Denver, the Contract was in fact performed and the services were in fact provided by Q Advisors at Q Advisors' offices in the City and County of Denver, the damages have been felt and incurred by Q Advisors in the City and County of Denver, and Q Advisors is a resident of the City and County of Denver.  The financing transaction in which Q Advisors assisted Mergence and Spring was done by the lending team of Fifth Third Bank located in the City and County of Denver.  Spring currently transacts business in the City and County of Denver.

## Statement of Facts

10.      In late 2012, Ellis and Spring's Chief Financial Officer Kent Forsgren asked Q Advisors to provide financial investment banking services to Mergence and Spring, including exploring possible financing transactions for Spring.

11.      In order to convince Q Advisors to enter into the Contract, Ellis informed Q Advisors that Mergence and Spring envisioned "a larger deal with Spring all in," meaning that Spring would likely be sold in the future.  Mergence and Spring also informed Q Advisors that Mergence's largest shareholder (Dickman) intended to sell Spring "within twenty-four to thirty-six months."

12.      The parties negotiated the Contract between December 20, 2012 and January 18, 2013.  Ellis, who was the President of both Mergence and Spring, and Spring's Chief Financial

Officer Kent Forsgren, negotiated the terms on behalf of Spring and "Mergence dba Sprint Retail Group."  Q Advisors' Michael Crawford ("Crawford") negotiated on behalf of Q Advisors.

13.     Ellis and Crawford each signed the Contract on or about January 18, 2013.

14.     At the time Ellis signed the Contract, Ellis held himself out as an officer and agent of Mergence Corporation and an officer and agent of Spring.

15.     Ellis signed the Contract as "President."

16.     At the time Ellis signed the Contract, Mergence, Ellis, and Mergence's other officers and directors all knew or should have known that Mergence was not legally permitted to transact business under the law of it's state of incorporation.

17.     Unbeknownst to Q Advisors, Mergence was a Nevada corporation and Mergence's directors and officers had failed to follow Nevada corporate legal requirements since at least August 2009.

18.     Under Nevada law, Mergence was not permitted to transact business at the time Ellis signed the Contract in January 2013.

19.     In 2012 and 2013, Mergence held itself out as a Delaware corporation, which it never was.

20.     The Contract provides that "Mergence Corporation (dba Spring Retail Group) ("Mergence" or the "Company")" engaged Q Advisors "to provide financial advisory services on an exclusive basis (the "Services"), to the Company in connection with the private placement to qualified institutional buyers" of debt.

21.     The Contract provides that Mergence would compensate Q Advisors for Q Advisors' work.

22.     Section 15 of the Contract provides that "In the event Mergence elects to pursue a sale or recapitalization of the Company, whether this letter is in effect or within thirty-six (36) months of its termination, Q Advisors and Mergence **shall negotiate in good faith a new engagement letter** under which Q Advisors would be the Company's exclusive financial advisor for that assignment/transaction."  (Emphasis added in bold.)

23.     Section 15 also reflects the parties' intent and agreement to "terms of an engagement that are commercially reasonable and that, when taken as a whole, are not materially inconsistent with those available at the time from investment banks or other organizations with experience and qualifications substantially similar to those of Q Advisors."  The terms of such engagements are well-known, and the parties themselves had a history of two other engagements.

24.     With Q Advisors' assistance, Spring completed a debt transaction with Fifth Third Bank in July 2013.

25.     Between December 2012 and July 2013, Mergence and Spring officers and agents sent numerous e-mails to Q Advisors in Denver, Colorado in connection with the services Q Advisors provided under the Contract.  Mergence and Spring officers and agents placed numerous telephone calls to Q Advisors in Denver, Colorado in connection with the services Q Advisors provided under the Contract.  Q Advisors performed substantially all the services under the Contract at Q Advisors offices in Denver, Colorado.

26.     Without telling Q Advisors, the officers and directors of Mergence and Spring discussed the possible sale of Spring at various times between August 2013 and November 2013.

27.     Without telling Q Advisors, Mergence and Spring agreed that Spring would be sold.

6

28.     Without telling Q Advisors, Mergence sold Spring to a public company named Gamestop Corp. in November 2013 in a transaction with a total enterprise value of approximately $97 million.  Q Advisors had originally introduced Gamestop to Mergence and Spring Retail Group in connection with an earlier transaction for Mergence and Spring in 2012.

29.     Mergence and Spring never told Q Advisors that Spring was being sold at any time before Spring was sold to Gamestop in November 2013.

30.     Mergence and Spring never negotiated a new engagement letter with Q Advisors in connection with the November 2013 sale of Spring, as the Contract required.

31.     Defendants have never paid Q Advisors any fees in connection with the November 2013 sale of Spring.

32.     Defendants have failed and refused to pay Q Advisors any fees in connection with the November 2013 sale of Spring.

33.     Ellis knew or had reason to know that Mergence lacked capacity to do business as of 2012 and 2013.

34.     Ellis is personally liable for the debts of Mergence under the Contract.

35.     Ellis is a party to the Contract as a matter of agency and common law.

36.     Mergence and Ellis have failed to pay Q Advisors what they owe under the Contract.

### First Claim for Relief
### (Breach of Contract – Mergence)

37.     Plaintiff incorporates by reference all of the foregoing paragraphs.

38.     The Contract between Q Advisors and Mergence is valid and enforceable.

39.     Q Advisors performed its obligations under the Contract.

40.     Mergence breached its obligation to engage and pay Q Advisors for the sale of Spring according to the terms of the Contract.

41.     Q Advisors has suffered damage because of Mergence's breach of the Contract.

### Second Claim for Relief
### (Breach of Contract – Ellis)

42.     Plaintiff incorporates by reference all of the foregoing paragraphs.

43.     The Contract is valid and enforceable.

44.     Q Advisors performed its obligations under the Contract.

45.     Ellis held himself out as an agent for Mergence and Spring at the time he signed the Contract.

46.     At the time he signed the Contract and thereafter, Ellis knew or should have known that Mergence lacked capacity to be a party to a contract.

47.     Ellis is therefore personally liable under the Contract.

48.     Ellis breached his obligation to engage and pay Q Advisors for the sale of Spring according to the terms of the Contract.

49.     Q Advisors has suffered damage because of Ellis' breach of the Contract.

### Third Claim for Relief
### (Breach of Covenant of Good Faith and Fair Dealing – Mergence)

50.     Plaintiff incorporates by reference all of the foregoing paragraphs.

51.     The Contract included an implied covenant of good faith and fair dealing.

52.     Mergence breached the covenant of good faith and fair dealing by failing to inform Q Advisors that Mergence and Spring were pursuing a sale of Spring, by failing to inform Q Advisors that it had agreed to sell Spring, by failing to engage Q Advisors in connection with the sale, by hiding its intentions for Spring and the implications of that sale for Q Advisors under

the Contract, and by its bad faith failure and refusal to pay Q Advisors what it owes under the Contract.

### Fourth Claim for Relief
### (Breach of Covenant Good Faith and Fair Dealing – Ellis)

53.     Plaintiff incorporates by reference all of the foregoing paragraphs.

54.     The Contract included an implied covenant of good faith and fair dealing.

55.     Ellis breached the covenant of good faith and fair dealing by failing to inform Q Advisors that Mergence and Spring were pursuing a sale of Spring, by failing to inform Q Advisors he and others were involved in negotiating and selling Spring, by failing to engage Q Advisors in connection with the sale, by hiding his, Mergence's and Spring's intentions for Spring and the implications of that sale for Q Advisors under the Contract, and by his bad faith failure and refusal to pay Q Advisors what he owes under the Contract.

### Prayer for Relief

WHEREFORE, Plaintiff requests a judgment in his favor and against Defendant, including the following:

A.     Compensatory damages;

B.     Costs, as provided by applicable law; and

C.     Such further and additional relief as the Court may deem just and equitable.

### Jury Demand

Plaintiff demands trial by jury of all issues so triable.

Dated:  March 17, 2015                    Respectfully submitted,

                                          John S. Phillips #24884
                                          Sean C. Grimsley #36422
                                          BARTLIT BECK HERMAN PALENCHAR
                                             & SCOTT LLP

                                          Attorneys for Plaintiff

Address of Plaintiff Q Advisors:

Q Advisors LLC
1899 Wynkoop Street, Suite 200
Denver, Colorado 80202

*Document filed electronically.  See C.R.C.P. 121, § 1-26.  Original on file.*