**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-01093-KMT

Q ADVISORS LLC,

        Plaintiff,

vs.

MERGENCE CORPORATION,

        Defendant.

---

**CORRECTED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY THESE PROCEEDINGS PENDING RESOLUTION OF ACTION CURRENTLY PENDING IN UTAH STATE COURT**

---

Defendant Mergence Corporation, a Delaware corporation ("Mergence-Delaware"), hereby submits this corrected memorandum in support of its Motion to Dismiss or in the Alternative to Stay These Proceedings Pending Resolution of Action Currently Pending in Utah State Court ("Motion"). The previous memorandum [Doc # 12] did not separately attach the Declaration of Jason S. Ellis.

**SUMMARY**

The Court should grant the Motion because of the *Colorado River* abstention doctrine. The precise subjects of Plaintiff's claims in this case are presently being litigated in an earlier-filed Utah state court case, and granting the Motion will avoid parallel and piecemeal litigation. The Utah case provides a more convenient forum for resolving this dispute, and Plaintiff's rights will be properly protected there. Utah law, rather than Federal or Colorado law, governs this

dispute, and Plaintiff can only prevail if Utah law is modified or extended; a Utah state court is best-positioned to consider Plaintiff's argument. As such, the Court should grant the Motion.

## FACTUAL BACKGROUND

**A.     The Parties.**

1.      Mergence-Delaware is a Delaware corporation with its principal place of business and primary operations in Salt Lake City, Utah. Mergence-Delaware is a holding company for technology businesses. (*See* Declaration of Jason S. Ellis ("Ellis Decl."), ¶ 2, filed concurrently herewith.)

2.      Plaintiff Q Advisors, LLC ("Q Advisors") is a Colorado limited liability company headquartered in Denver, Colorado. It is a securities broker-dealer and assists companies with business transactions such as mergers and acquisitions, debt and equity financings, and recapitalizations.

**B.     Q Advisors Helps Mergence-Delaware Sell One of Its Utah Subsidiaries, Simply Mac.**

3.      On March 15, 2012, Mergence-Delaware entered into an agreement with Q Advisors ("Letter No. 1," attached as Exhibit A to Ellis Decl.) whereby Q Advisors would provide investment banking services in connection with the sale of a subsidiary of Mergence-Delaware known as Simply Mac, Inc. ("Simply Mac"), a Utah corporation. At the time of Letter No. 1, the principal place of business of Mergence-Delaware and Simply Mac was in Salt Lake City, Utah. (Ellis Decl., ¶ 3.)

4.      Letter No. 1 provides that "This letter agreement shall be governed by and construed in accordance with the laws of the State of Utah as applied to contracts made and performed in such state." (Letter No. 1, p. 5, ¶ 8.)

5. Pursuant to Letter No. 1, Q Advisors assisted Mergence-Delaware in the sale of Simply Mac, and Q Advisors received fees of $690,000 plus expenses for its services. Q Advisors has never claimed that it is owed additional fees in connection with the sale of Simply Mac. (Ellis Decl., ¶ 4.)

6. The sale of Simply Mac took place in two transactions, the first in October, 2012, and the second in November, 2013. (*See* excerpts from the first Stock Purchase Agreement attached as Exhibit B to the Ellis Decl.) The Stock Purchase Agreement shows that in addition to Mergence-Delaware, the other selling shareholders were four individuals who were Utah residents, including Steve Bain, Tyler Dickman, Kent Thomas, and Kent Forsgren. (*Id.*)

## C. Q Advisors Helps Raise Capital for Mergence-Delaware's Subsidiary Spring Communications Holding, Inc., which Had Its Principal Place of Business in Utah.

7. On January 18, 2013, Mergence-Delaware entered into a second agreement ("Letter No. 2," attached as Exhibit C to the Ellis Decl.) with Q Advisors whereby Q Advisors would provide investment banking services. Pursuant to Letter No. 2, Q Advisors agreed to provide services in raising capital "in connection with a private placement to qualified institutional buyers." (*Id.* at p. 1.)

8. Letter No. 2 provides that "This letter agreement shall be governed by and construed in accordance with the laws of the State of Utah as applied to contracts made and performed in such state." (*Id.* at p. 5, ¶ 8.)

9. Paragraph 15 of Letter No. 2 also provides that in the event Mergence-Delaware pursued a sale or recapitalization of Mergence-Delaware, the parties would "negotiate in good faith a new engagement letter under which Q Advisors would be [Mergence-Delaware's] exclusive financial advisor for that assignment/transaction." (*Id.* at p. 5.) Paragraph 15 does not

set forth any material or essential terms – including pricing or payment terms – with respect to the possible future agreement to be negotiated by the parties. (*See id.*)

10. At the time of Letter No. 2, Mergence-Delaware was the 100% owner of a subsidiary known as Spring Communications Holding, Inc., a Delaware corporation ("Spring Communications"). Spring Communications in turn was the 100% owner of various corporate entities, including Spring Communications, Inc., a Utah corporation ("Spring"). (Ellis Decl., ¶ 7.)

11. At all times relevant to Letter No. 2, the principal place of business of Mergence-Delaware, Spring Communications, and Spring was Salt Lake City, Utah. (*Id.* ¶ 8.)

12. In 2013, Spring operated 60 stores as an exclusive retailer of AT&T wireless devices and services. The stores were located in many different states, and a few of those stores were located in Colorado. (*Id.* ¶ 9.)

13. Pursuant to Letter No. 2, Q Advisors assisted Spring Communications and its subsidiaries, including Spring, in obtaining financing from Fifth Third Bank. Spring Communications and its subsidiaries entered into a loan and security agreement with Fifth Third Bank in connection with this financing transaction. This financing transaction closed in July 2013. (*Id.* ¶¶ 10-11.)

14. Mergence-Delaware was not a party to the loan and security agreement and did not receive any of the proceeds from the financing. (*Id.* ¶ 11; *see also* excerpts from loan and security agreement for this financing transaction attached as Exhibit D to the Ellis Decl.)

15. Spring Communications and related entities paid $670,000 in fees plus expenses to Q Advisors for its investment banking services in raising the debt capital pursuant to Letter

No. 2.  Q Advisors has never claimed that it is owed additional fees related to this transaction. (Ellis Decl., ¶ 12.)

### D. Mergence-Delaware Sells Spring Communications without the Help of Q Advisors.

16. In October 2013, Mergence-Delaware sold 100% of its shares in Spring Communications to GameStop Corp. ("GameStop"), a company with its principal office in Texas. (*Id.* ¶¶ 13-14; *see also* excerpts from the agreement at Exhibit E to the Ellis Decl.)

17. In its amended complaint against Mergence-Delaware in this action, Q Advisors seeks compensation related to the sale of Spring Communications to GameStop. (*See* Q Advisors' Amended Complaint on file herein; Ellis Decl., ¶ 14.)

18. Q Advisors had no involvement in the transaction between Mergence-Delaware and GameStop for the sale of Spring Communications. Q Advisors has none of the files or documents related to this transaction, all of which are stored in the records of Mergence-Delaware in Salt Lake City, Utah or the offices of GameStop in Texas.  None of the events related to this transaction occurred in Colorado.  None of the individuals who were involved in this transaction reside in Colorado, but reside in Utah and Texas. (*Id*., ¶ 15.)

19. Mergence-Delaware did not retain the services of any investment banker in connection with the sale of Spring Communications to GameStop because it did not need any such services for this transaction. (*Id.* ¶ 16.)

20. As noted above, Spring did have operations in Colorado at the time of the sale of Spring Communications to GameStop in October 2013.  However, Mergence-Delaware has never had any employees, officers, agents, offices, bank accounts, or phone listings in Colorado. Mergence-Delaware has never advertised or registered to do business in Colorado nor has it sold

any products or services in Colorado. Mergence-Delaware has never owned or leased any real property in Colorado. (*Id.* ¶ 17.)

**E.    Q Advisors Sues Mergence-Nevada and Jason Ellis for Not Negotiating a New Agreement with Q Advisors in Connection with the Sale of Spring Communications to GameStop.**

21.    On March 17, 2015, Q Advisors filed a Complaint in the District Court for the City and County of Denver against Mergence Corporation, a Nevada Corporation ("Mergence-Nevada") and Jason S. Ellis, the president of Mergence-Nevada. In the Complaint, Q Advisors alleged that the parties to Letter No. 2 are Mergence-Nevada and Q Advisors and that Mergence-Nevada breached paragraph 15 of Letter No. 2 and the implied covenant of good faith and fair dealing because it did not negotiate a new engagement letter with Q Advisors prior to the sale of Spring Communications to GameStop. (*See* Complaint attached hereto as Exhibit 1.)

22.    Mergence-Nevada is an actual entity that is separate and distinct from Mergence-Delaware. It is a Nevada corporation that was formed in August 2005. Mergence-Nevada has never conducted any business in Colorado or with Q Advisors. (*See* Affidavit of Jason Ellis dated March 25, 2015, attached hereto as Exhibit 2.)

**F.    Mergence-Delaware Files a Complaint against Q Advisors in Utah State Court.**

23.    On March 18, 2015, Mergence-Delaware filed suit against Q Advisors in Utah state court seeking a judgment declaring that Mergence-Delaware owes no fees to Q Advisors as a result of the sale of Spring Communications to GameStop. In support of its claim for declaratory relief, Mergence-Delaware asserts in its Complaint that Mergence-Delaware is a party to Letter No. 2; that Q Advisors provided no services to Mergence-Delaware or Spring Communications in connection with Mergence-Delaware's sale of Spring Communications to

GameStop; and that Utah law does not recognize a duty to negotiate an agreement.  (*See* Exhibit 3, attached hereto.)

24. Mergence-Delaware did not name Mergence-Nevada or Ellis as parties to the Utah action because they are not parties to Letter No. 2.

25. Q Advisors was served with the Utah complaint on March 31, 2015.  Q Advisors answered the Utah Complaint and filed a Counterclaim against Mergence-Delaware on April 30, 2015.  (*See* Exhibit 4, attached hereto.)

26. Mergence-Delaware filed a Reply to Q Advisors' Counterclaim on May 21, 2015.

**G.   Mergence-Nevada and Ellis Move to Dismiss Q Advisors' Colorado Complaint and Q Advisors Moves to Add Mergence-Delaware as a Party to the Colorado Complaint.**

27. On March 30, 2015, Mergence-Nevada and Ellis moved the Colorado state court to dismiss Q Advisors' Complaint.  Q Advisors conceded the grounds for dismissal, but moved the court for permission to amend its Complaint to drop Mergence-Nevada and Ellis as defendants to the action and to add a new party, Mergence-Delaware, as the sole defendant.

28. On May 5, 2015, the Colorado state court dismissed Mergence-Nevada and Ellis as defendants to the Colorado suit.  Under the liberal standard applied to motions for leave to amend, the court permitted Q Advisors to amend its Complaint to add Mergence-Delaware as the sole defendant.  Q Advisors filed its Amended Complaint against Mergence-Delaware on the same day, May 5, 2015.  (*See* Q Advisors' Amended Complaint on file herein.)

29. Mergence-Delaware accepted service of Q Advisors' Amended Complaint on May 6, 2015.  (*See* Exhibit 5, attached hereto.)  On May 26, 2015, Mergence-Delaware removed this matter from the District Court for the City and County of Denver to this federal court.

### H. Q Advisors Moves to Stay the Parties' Action in Utah State Court.

32. On April 30, 2015, Q Advisors moved the Utah state court to stay the Utah action pending final resolution of the parties' Colorado action. On May 20, 2015, Mergence-Delaware filed an opposition to Q Advisors' motion to stay, explaining, among other things, how each of the applicable stay factors weighed against granting a stay of the Utah action. (*See* Exhibit 6, attached hereto.)

### I. Mergence-Delaware Moves for Summary Judgment in the Utah Action.

34. On May 20, 2015, Mergence-Delaware moved in the Utah state court lawsuit for summary judgment on Q Advisors' counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Mergence-Delaware moved for summary judgment on the grounds that Utah law does not recognize a duty to negotiate, and therefore (1) no enforceable contract exists between the parties to support Q Advisors' breach of contract claim and (2) Q Advisors cannot assert a claim for breach of the implied covenant of good faith and fair dealing because there is no contract to which its claim can attach. (*See* Exhibit 7, attached hereto.)

## ARGUMENT

### A. The Court Should Dismiss or Stay this Case under the *Colorado River* Abstention Doctrine

The *Colorado River* abstention doctrine provides that although federal courts generally have an obligation to exercise the jurisdiction given them, there are circumstances where it is appropriate for a federal court to dismiss or stay its proceedings in light of a parallel state court proceeding. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817-20 (1976). Suits are parallel if substantially the same parties are litigating substantially the same issues in a

federal court and a state court. *See Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). The foundation for the *Colorado River* abstention doctrine "rest[s] on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The *Colorado River* abstention doctrine "concerns itself with efficiency and economy. Its goal is 'to preserve judicial resources.'" *D.A. Osguthorpe Family P'ship v. ASC Utah Inc.*, 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). The *Colorado River* abstention doctrine "was adopted to avoid duplicative litigation." *Rienhardt*, 164 F.3d at 1302; *see also D.A. Osguthorpe*, 705 F.3d at 1233 ("The avoidance of duplicative litigation . . . is at the core of the *Colorado River* doctrine.").

Drawing from the United States Supreme Court decisions in *Colorado River and Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983), Colorado federal district courts have held that there are at least seven non-exclusive factors to consider when assessing whether it is appropriate to stay or dismiss federal proceedings due to ongoing state court proceedings between the parties:

> (1) whether the state or federal court has assumed jurisdiction over property in dispute; (2) the inconvenience to the parties of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious nature of the litigation; (6) whether federal law provides the rule of decision; and (7) and the adequacy of the state court proceeding to protect the federal plaintiff's rights.

*MacIntyre v. JP Morgan Chase Bank*, Civil Action 12-cv-2586-WJM-MEH, *Order Granting in Part and Denying in Part Plaintiff's Motion to Alter or Amend Judgment* (March 19, 2015).[1] No single factor is dispositive. Courts should carefully consider each factor, "taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise." *D.A. Osguthorpe*, 705 F.3d at 1234 (citing *Colorado River*, 424 U.S. at 818-19.) "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16.

**B.     The Abstention Factors Weigh in favor of Dismissing this Action or Staying it until Resolution of the Parties' Utah Action**

    **1.     This Colorado federal forum is inconvenient.**

There are several reasons why this federal court in Colorado is an inconvenient forum in which to litigate the parties' dispute. The parties' dispute centers on whether Mergence-Delaware violated paragraph 15 of Letter No. 2 or an implied covenant of good faith and fair dealing when it sold Spring Communications to GameStop without the help of Q Advisors. None of the events related to this complained-of transaction occurred in Colorado, no persons involved in the transaction reside in Colorado, and none of the records for this transaction are stored in Colorado. The transaction took place between Mergence-Delaware in Utah and GameStop in Texas. Q Advisors had no involvement in the transaction. Most of the potential witnesses who have knowledge about or were involved in the transaction reside in Utah. (*See* Mergence-Delaware's initial disclosures in Utah action, attached hereto as Exhibit 8.) The files or documents related to this transaction are stored in the records of Mergence-Delaware in Salt

---

[1] Criteria similar to the *Colorado River* doctrine would have governed the State Court's deference to the Utah case had this case not been removed. *See Nationwide Mut. Ins. Co. v. Mayer,* 833 P.2d 60 (Colo. App. 1992) and *Power Train, Inc. v. Stuver,* 550 P.2d 1293 (Utah 1976).

Lake City, Utah or the offices of GameStop in Texas. In short, the transaction which forms the very basis of the parties' dispute has no connection to Colorado, but it does have a strong connection with Utah.[2] Q Advisors agreed in both Letters that the contracts were "made and performed in" Utah. (*See* ¶¶ 8 to Letters Nos. 1 and 2, Exhibits A and C to Ellis Decl.)

This Colorado forum is also inconvenient in the sense that this Court, in order to provide relief to Q Advisors, must not only apply Utah law, but it must also reverse, modify, or extend current Utah law. The enforceability of paragraph 15 of Letter No. 2 is governed and controlled by Utah law, and current Utah law provides that indefinite and incomplete agreements to negotiate an agreement in the future – which paragraph 15 of Letter No. 2 plainly is – are unenforceable. *See King v. Nev. Elec. Inv. Co.*, 893 F. Supp. 1006, 1015-18 (D. Utah 1994); *see also* Exhibit 7, pp. 6-11. Although this Court is certainly capable of applying Utah law, the task of reversing, modifying, or extending Utah law is more appropriately left to Utah courts.

### 2. Piecemeal litigation will occur if this action and the parties' Utah action proceed simultaneously.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). Q Advisor's Colorado Amended Complaint and Utah Counterclaim contain the same causes of action and are based upon the same set of facts, namely Mergence-Delaware's sale of Spring Communications to GameStop

---

[2] In the event this Court denies the Motion, Mergence-Delaware anticipates a motion to dismiss based upon the absence of personal jurisdiction. Mergence-Delaware reserves, and does not waive (as the Motion is not brought pursuant to F.R.C.P. 12), its right to file such a motion. Until late 2013, Mergence-Delaware was the indirect parent corporation of Spring, which operated retail stores in Colorado. However, Mergence-Delaware has never done business in Colorado and Q Advisors' claims arise from a transaction with no connection with Colorado. The activities of a subsidiary are not imputed to the parent company for purposes of jurisdiction. *Quarles v. Fuqua Indus., Inc.* 504 F.2d 1358, 1362 (10th Cir. 2004).

without the involvement of Q Advisors. The same discovery will take place in both cases. The same pretrial motions will be filed. Both courts will receive the same evidence and hear from the same witnesses in order to rule upon the parties' claims. The cases will be duplicitous and the parties' and courts' resources will be expended unnecessarily.

Avoiding piecemeal litigation is the "paramount" factor under *Colorado River*, as this doctrine was adopted to avoid duplicative litigation. *See Moses H. Cone*, 460 U.S. at 19. In this case, there is no need for the parties to litigate simultaneously in this federal court and the Utah state court. The aims of the *Colorado River* doctrine – effectuating wise judicial administration, conserving judicial resources, and comprehensively disposing of litigation – would be best met by dismissing or staying this action in deference to the Utah action.

### 3.     This action is governed and controlled by Utah law, not federal law.

The factor regarding whether federal or state law provides the rule of decision weighs heavily in favor of dismissing or staying this matter, as Utah law governs the parties' dispute. The parties' claims in this action relate to Letter No. 2, which expressly states that "This letter agreement shall be governed by and construed in accordance with the laws of the State of Utah as applied to contracts made and performed in such state." (*See* Letter No. 2, p. 5, attached as Exhibit C to the Ellis Decl.) None of the parties' claims arise under federal law, nor do they arise under Colorado law. There are no federal or Colorado law claims to be adjudicated. All issues before the Court are Utah state law issues and Utah is the more appropriate forum for resolving the parties' dispute.

**4.     This action is vexatious in nature, as current Utah law does not enforce incomplete or indefinite agreements to negotiate a new agreement.**

The factor concerning the vexatious nature of the litigation is relevant in this matter, as Q Advisors knew or should have known based upon reasonable investigation and research, that Utah law does not enforce incomplete and indefinite agreements to negotiate a new agreement. Q Advisors has asked this Court in its Colorado Amended Complaint to do just that.

**5.     The Utah state court proceedings will adequately protect Q Advisors' rights and is equipped to resolve all issues between the parties.**

"This factor is most often employed, and is most important, where there are exclusively federal claims that could not be brought as part of the state-court action." *See Bushansky v. Armacost*, No. C 12-01597 WHA, 2012 WL 3276937, at *4 (N.D. Cal. Aug. 9, 2012). In this case, Q Advisors has asserted identical claims for relief in this action and in the Utah action, and none of these claims arise under or are governed by federal or Colorado law. There are no exclusively federal claims that could not be brought by Q Advisors as part of the Utah action, and Q Advisors has not alleged any violation of rights provided under federal law. All of the parties' claims arise under Utah law and, as explained above, the Utah state court overseeing the Utah action is well positioned to hear and decide all of the parties' claims under Utah law. Because there are no federal claims to be adjudicated and the Utah state court is capable of resolving all of the parties' claims, a dismissal pursuant to *Colorado River*, instead of just a stay, is appropriate. *See MacIntyre v. JP Morgan Chase Bank*, Civil Action 12-cv-2586-WJM-MEH, *Order Granting in Part and Denying in Part Plaintiff's Motion to Alter or Amend Judgment* (March 19, 2015) (holding that a dismissal, instead of a stay, under *Colorado River* was

appropriate because no federal claims were asserted in the state court action and there was no need to preserve the federal forum).

### 6. The Utah state court obtained jurisdiction first and has progressed further than this action.

When courts evaluate the order of jurisdiction factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *See Moses H. Cone*, 460 U.S. at 3. The order of jurisdiction factor weighs in favor of dismissing or staying this action because the Utah state court obtained jurisdiction of the parties' dispute first and because the Utah action has also progressed further than this Colorado action.

Q Advisors' Amended Complaint alleging causes of action against Mergence-Delaware was not filed in Colorado until May 5, 2015. Mergence-Delaware has not yet responded to the Amended Complaint. Mergence-Delaware filed its Utah Complaint against Q Advisors on March 18, 2015. Furthermore, Mergence-Delaware achieved service of process on Q Advisors in the Utah action before Q Advisors achieved service of process on Mergence-Delaware in the Colorado action. The fact that Q Advisors sued Mergence-Nevada and Mr. Ellis in Colorado before Mergence-Delaware filed its Complaint in Utah is irrelevant because Mergence-Nevada is a completely separate and distinct entity from Mergence-Delaware. A lawsuit against Mergence-Nevada is not the same as a lawsuit against Mergence-Delaware. *See Sachs v. Lesser*, 163 P.3d 662, ¶ 51 (Utah App 2007) ("Utah law has long recognized the importance of the separate legal identity of corporations and has been unwilling to permit parties to ignore those distinctions.").

More progress has been achieved in the Utah action than in this Colorado action. Q Advisors has answered Mergence-Delaware's Utah Complaint and has filed a Counterclaim

against Mergence-Delaware in the Utah action. Mergence-Delaware has filed a Reply to Q Advisors' Counterclaim and has also filed a motion for summary judgment with respect to the counterclaim. In addition, discovery has started in the Utah action. Mergence-Delaware has served Q Advisors with its initial disclosures and its first set of interrogatories and requests for production of documents. This Colorado action has not progressed beyond the filing of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss or in the Alternative to Stay These Proceedings Pending Resolution of Action Currently Pending in Utah State Court.

DATED this 27th day of May, 2015.

| | |
|---|---|
| JONES & KELLER, P.C. | KRUSE LANDA MAYCOCK & RICKS, LLC |
| 1999 Broadway, Suite 3150 | 136 East South Temple, Suite 2100 |
| Denver, CO  80202 | Salt Lake City, Utah  84145-0561 |
| Telephone:  (303) 573-1600 | Telephone:  (801) 531-7090 |
| tmcmahon@joneskeller.com | sloosle@klmrlaw.com |
| agoldhamer@joneskeller.com | pnielson@klmrlaw.com |
| | |
| /s/ Aaron Goldhamer | /s/ Steven G. Loosle |
| Thomas P. McMahon | Steven G. Loosle |
| Aaron D. Goldhamer | Platte S. Nielson |
| *Attorneys for Defendant* | *Attorneys for Defendant* |
| | (*pro hac vice* applications forthcoming) |

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2015, I electronically filed the foregoing CORRECTED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY THESE PROCEEDINGS PENDING RESOLUTION OF ACTION CURRENTLY PENDING IN UTAH STATE COURT electronically through the CM/ECF system which caused the following to be served by electronic means:

>John S. Phillips
>Sean C. Grimsley
>BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
>1899 Wynkoop Street, 8th Floor
>Denver, CO  80202

>>s/ Renae Mesch