# EXHIBIT 3

Utah State Court Complaint

Steven G. Loosle (4874)
Platte S. Nielson (13312)
KRUSE LANDA MAYCOCK & RICKS, LLC
136 East South Temple, Suite 2100
P. O. Box 45561
Salt Lake City, Utah  84145-0561
Telephone:  (801) 531-7090
sloosle@klmrlaw.com
pnielson@klmrlaw.com
*Attorneys for Plaintiffs*

IN THE THIRD JUDICIAL DISTRICT IN AND FOR
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| MERGENCE CORPORATION, dba SPRING RETAIL GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Q ADVISORS LLC, a Colorado limited liability company,<br><br>Defendant. | **COMPLAINT**<br><br><br><br>Civil No. _____<br>Judge _____ |

Plaintiffs hereby complain and allege as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Mergence Corporation, dba Spring Retail Group ("Mergence"), is a Delaware corporation with its principal place of business and primary operations in Salt Lake City, Utah.

2. Defendant Q Advisors LLC ("Q Advisors") is a Colorado limited liability company.

3. This Court has jurisdiction over this matter pursuant to UTAH CODE ANN. §§ 78A-5-102 and 78B-6-401.

{00288660/1 }

4. Venue is proper in this Court pursuant to UTAH CODE ANN. § 78B-3-304.

5. This Court has jurisdiction over Q Advisors because it conducted business with Mergence in Utah in connection with providing investment advisory services to Mergence in Utah. Q Advisors has visited Utah on multiple occasions in providing services to Mergence. Q Advisors has also conducted business with Mergence in Utah by means of telephone and email. Q Advisors has also entered into multiple written agreements with Mergence with respect to providing investment advisory services, and each contract provides for the application of Utah law.

## FACTUAL BACKGROUND

6. Mergence is a holding company for technology businesses.

7. In March 2012, Mergence entered into an agreement with Q Advisors whereby Q Advisors agreed to provide investment advisory services with respect to the possible sale of Simply Mac, Inc., a subsidiary of Mergence. Simply Mac was a Utah corporation.

8. In October 2012, Mergence sold 49% of Simply Mac to GameStop. In or about October 2013, Mergence sold the remaining 51% of Simply Mac to GameStop. Q Advisors was paid fees in connection with this transaction. The closing for the transactions occurred in Utah.

9. Mergence entered into a January 18, 2013 agreement with Q Advisors whereby Q Advisors would provide investment advisory services related to raising capital. Fees were paid to Q Advisors when a loan was obtained. Closing for the loan occurred in Utah.

10. In connection with the transactions described above, Q Advisor was paid nearly $1.4 million.

11.     Paragraph 15 of the January 18, 2013 agreement between Mergence and Q Advisors provides as follows:

> 15.   In the event that Mergence elects to pursue a sale or recapitalization of the Company, whether while this letter is in effect or within thirty-six (36) months of its termination, Q Advisors and Mergence shall negotiate in good faith a new engagement letter under which Q Advisors would be the Company's exclusive financial advisor for that assignment/transaction. The intent of both parties would be to agree to terms of an engagement that are commercially reasonable and that, when taken as a whole, are not materially inconsistent with those available at the time from investment banks or other organizations with experience and qualifications substantially similar to those of Q Advisors.

(*See* January 18, 2013 engagement letter, attached as Exhibit A.)

12.     Since January 2013, Mergence has not been sold or recapitalized.

13.     In or about October 2013, Mergence sold 100% of Spring Communications Holdings, Inc., dba Spring Mobile ("Spring Mobile") to GameStop.  The closing for this transaction occurred in Utah.

14.     In connection with the sale of Spring Mobile to GameStop, neither Mergence nor Spring Mobile retained the services of any investment advisors and had no need for any such services.

15.     Q Advisors provided no services to Mergence or Spring Mobile in connection with the sale of Spring Mobile to GameStop.

16.     Q Advisors contends based upon paragraph 15 of the January 18, 2013 agreement that Mergence was required to retain its services and Mergence owes Q Advisors fees in excess of $1 million related to the sale of Spring Mobile.  Q Advisors appears to take the position that

Mergence breached a duty to negotiate a new contract and breached the implied covenant of good faith and fair dealing in failing to do so.

17.     Utah law does not recognize a duty to negotiate an agreement.

18.     Q Advisors has threatened that it intends to sue Mergence to recover fees related to the sale of Spring Mobile.

19.     Mergence disputes Q Advisors' position that additional fees are owed related to the sale of Spring Mobile.

### CAUSE OF ACTION

20.     Mergence hereby incorporates by reference the foregoing paragraphs of the Complaint.

21.     A dispute exists between Mergence and Q Advisors concerning the interpretation of the January 18, 2013 contract and concerning whether any fees are owing to Q Advisors under the contract based upon the sale of Spring Mobile.

22.     Pursuant to UTAH R. CIV. P. 57 and UTAH CODE ANN. § 78B-6-401 *et seq.*, Mergence is entitled to declaratory judgment providing that no additional amounts are owed to Q Advisors under the January 18, 2013 contract.

WHEREFORE, Mergence requests judgment as set forth above, together with costs, attorneys' fees, and such other and further relief as the Court deems proper in the circumstances.

DATED this 18th day of March, 2015.

KRUSE LANDA MAYCOCK & RICKS, LLC

/s/Steven G. Loosle
Steven G. Loosle
Platte S. Nielson
*Attorneys for Plaintiffs*

EXHIBIT A



Q Advisors

An Investment Banking Partnership

ENGAGEMENT LETTER

January 18, 2013

Mr. Jason Ellis
Chief Executive Officer
Mergence Corporation (dba Spring Retail Group)
3939 South Wasatch Boulevard
Suite 1
Salt Lake City, UT 84124

Dear Jason:

Pursuant to our recent discussions, I am pleased to confirm the arrangements under which Mergence Corporation (dba Spring Retail Group). ("Mergence" or the "Company") will engage Q Advisors LLC ("Q Advisors") to provide financial advisory services on an exclusive basis (the "Services"), to the Company in connection with a private placement to qualified institutional buyers of (a) senior debt securities (including revolving or term bank debt, hereinafter referred to as "Senior Debt"); or (b) debt securities that combine Senior Debt and Junior Debt into an integrated instrument (including unitranche debt, hereinafter referred to as "Blended Debt"). Together or independently, the private placement of Senior Debt or Blended Debt is hereinafter referred to as the "Financing".

1. **Retention.** During the term of our engagement, Q Advisors will provide the Company with a range of Services in connection with the Financing, including advice and assistance with respect to defining funding objectives and approaching potential investors. More specifically, in connection with the proposed Financing, Q Advisors will (a) assist the Company in developing and preparing its business plan and strategy, (b) identify and contact, on a best-efforts basis, potential financing sources, (c) work with the Company to prepare marketing materials describing the Company and the Financing, (d) recommend transaction structures and prepare or comment on term sheets, (e) assist in setting negotiation strategies and in conducting negotiations as reasonably requested by the Company, (f) review transaction documents, and (g) attend meetings of the Board of Directors or stockholders of the Company when requested.

The Company shall have final determination over any information and strategies developed by Q Advisors. In providing the Services, Q Advisors acknowledges that all terms and conditions of any Financing shall be subject to the approval of the Company's management or the Board of Directors of the Company, including, but not limited to, the type of security and the institutional investors that participate.

During the term of this letter agreement, the Company shall promptly refer any potential investors who approach the Company concerning a Financing to Q Advisors, and Q Advisors will then become the primary point of contact with any such investors.

Mr. Jason Ellis                                                                          *Confidential*
January 18, 2013

2. <u>Fees and Expenses.</u>  As we discussed, in consideration of the Services rendered to the Company under this letter agreement, the Company shall pay Q Advisors a monthly fee (the "Retainer") of $10,000, billed in advance (partial months will be pro rated accordingly) and payable within 10 days of receipt of invoice.

On consummation of the Financing, the Company shall pay Q Advisors a fee (the "Financing Fee") equal to (a) two percent (2.0%) of the Value of the Senior Debt; plus (b) two and three-quarters percent (2.75%) of the Value of the Blended Debt.  For purposes of this letter agreement, Value shall mean the face amount of debt (without deducting fees or expenses) raised by the Company from third parties in connection with the Financing.  Furthermore, Value shall include any amounts committed to by the investor(s) but unused or undrawn at closing.  However, if Prudential Capital (or an affiliate thereof) is the largest investor in the Senior Debt or Blended Debt, the Financing Fee will be reduced by ten percent (10.0%).

If the Financing closes, Q Advisors shall receive a Financing Fee of not less than $475,000 (the "Minimum Fee"), except, however, if Prudential Capital (or affiliates thereof) is the largest investor in the Financing, in which case the Minimum Fee will be $425,000.  All Retainer payments shall be credited against and reduce the Financing Fee.

In addition, whether or not the Financing closes, the Company will reimburse Q Advisors, on a monthly basis, for reasonable and documented out-of-pocket expenses incurred by Q Advisors in connection with this letter agreement.  Typically, these expenses may include travel, lodging, telephone and outside services incurred by Q Advisors.  In no event shall Q Advisors incur any single expense in excess of $2,000 without the prior consent of the Company.  Q Advisors anticipates that monthly reimbursable expenses will not be greater than $4,000, and it will make a good-faith effort to promptly alert Mergence, if it expects expenses to exceed that level.

3. <u>Termination.</u>  Services hereunder may be terminated with or without cause by either party at any time on 30 days' written notice and without liability or continuing obligation to the other (except for any compensation earned and expenses incurred by Q Advisors to the date of termination, including without limitation Financing Fees and except, in the case of termination by the Company for any reason other than the material breach of this agreement by Q Advisors, for Q Advisors' right under the "tail" provisions described immediately hereafter in this Section 3).  After termination of Q Advisors' engagement for any reason other than the material breach by Q Advisors, Q Advisors will provide the Company with a true and correct list of parties with whom Q Advisors, on Mergence's behalf, has been in contact regarding the Financing ("Tail List").  If, within twelve (12) months following the termination of Q Advisors' engagement, the Company (a) closes a Financing or (b) (i) enters into a Letter of Intent, Memorandum of Understanding, or substantially similar agreement (even if such agreement is non-binding) describing key terms and conditions of a Financing and (b) (ii) closes a Financing with that same entity, or an affiliate thereof (whether or not that closing occurs within the twelve (12) months referenced above) and the Financing is with any party who is on the Tail List, Q Advisors shall be entitled, as applicable, to the Financing Fee as set forth above.  Notwithstanding any termination of this letter agreement, the numbered paragraphs 2, 3, 5, 6 and 15 herein will remain operative regardless of any such termination.

4. <u>Independent Contractor.</u>  Q Advisors will act under this letter agreement as an independent contractor with duties solely to the Company, and nothing herein shall be construed as creating any other relationship between the Company and Q Advisors hereto including, but not limited to, partnership, agency or joint venture.  The relationship between Q Advisors and the Company under this letter agreement shall be solely that of consultant and client.  The Company, its agents, employees, representatives or affiliates shall under no circumstance be deemed agents or

Mr. Jason Ellis
January 18, 2013

*Confidential*

representatives of Q Advisors. Neither Q Advisors nor its agents, employees, representatives or affiliates, shall be deemed for any purpose to be employees of the Company. Furthermore, it is understood that Q Advisors is being engaged hereunder solely to provide the Services described above to the Company and that Q Advisors is not acting as an agent or fiduciary of, and shall have no duties or liability to, the directors or equity holders of the Company or any other third party in connection with its engagement hereunder, all of which are expressly waived. Any purchases of securities from, or other transactions involving, the Company shall be effected by the Company. Q Advisors and its employees, agents and representatives shall have no authority to bind the Company. Q Advisors understand that the Company may modify, suspend, terminate or withdraw entirely any Financing transaction or efforts to pursue such a transaction at any time.

5. **General Indemnity.** The Company agrees to indemnify Q Advisors and its members, directors, officers, agents and employees (each, an "Indemnified Party") of and from any losses, actions, claims, damages or liabilities (or actions in respect thereof) resulting from any claim raised by a third party relating to or arising out of the performance of the Services noted hereunder, other than the gross negligence or wilful misconduct by an Indemnified Party, and will reimburse the Indemnified Party hereunder for all expenses (including reasonable attorneys' fees and expenses) reasonably incurred by the Indemnified Party in connection with investigating, preparing or defending any such action or claim. The Company agrees that neither Q Advisors nor any Indemnified Party shall have any liability to the Company for or in connection with this engagement except for any such liability for losses, actions, claims, damages, liabilities or expenses incurred by the Company that result from Q Advisors' gross negligence or wilful misconduct. In the event that an indemnifiable claim arises hereunder, the Indemnified Party shall give prompt written notice of the claim to the Company and the Company shall have the right to assume the defense of such claim provided that there is no conflict of interest between the Company, on the one hand, and the Indemnified Party on the other hand. The Company will not settle any action by a third party against any Indemnified Party relating to this engagement without securing appropriate releases or other protection for such Indemnified Party. No Indemnified Party will settle any action without the consent of the Company, which consent shall not be unreasonably withheld.

If the indemnification provided for in the preceding paragraph shall for any reason be unavailable to an otherwise Indemnified Party, then the Company shall, in lieu of indemnifying such Indemnified Party, contribute to the amount paid or payable by such Indemnified Party (a) in such proportion as shall be appropriate to reflect the relative benefits received by the Company on the one hand and Q Advisors on the other from the engagement or the Financing or (b) if the allocation provided by clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company on the one hand and Q Advisors on the other with respect to the conduct or omission which resulted in a loss, action, claim, damage or liability, or action in respect thereof, as well as any other relevant equitable considerations. The relative benefits received by the Company on the one hand and Q Advisors on the other with respect to the Financing shall be deemed to be in the same proportion as the aggregate consideration or value received by the Company in the Financing (as the same may be reduced by damages incurred as a result thereof) bears to the Financing Fee received by Q Advisors under this letter agreement. Under no circumstances shall Q Advisors or any Indemnified Party be liable for any indirect, consequential, incidental, special, punitive or exemplary damages arising from any losses, actions, claims, damages or liabilities (or actions in respect thereof) resulting from any claim raised by a third party relating to or arising out of the performance of the Services, regardless of whether Q Advisors has been apprised of the likelihood of such damages occurring.

In the event the Company requests that Q Advisors deliver certain documents and information relating to this engagement via electronic transmissions, the Company acknowledges and agrees that

Mr. Jason Ellis
January 18, 2013

the privacy and integrity of electronic transmissions cannot be guaranteed due to the possibility that third parties could intercept, view or alter such electronic transmissions. To the extent that any documents or information relating to this engagement are transmitted electronically, the Company agrees to release Q Advisors from any loss or liability incurred in connection with the electronic transmission of any such documents and information, including the unauthorized interception, alteration or fraudulent generation and transmission of electronic transmissions by third parties. Under no circumstances shall Q Advisors be liable for any ordinary, direct, indirect, consequential, incidental, special, punitive or exemplary damages arising out of the foregoing, regardless of whether Q Advisors has been apprised of the likelihood of such damages occurring.

6. **Reliance on Information; Confidentiality.** The Company understands and confirms (a) that Q Advisors will be using and relying on data, material and information about the Company furnished to Q Advisors by the Company, its employees and representatives and (b) that Q Advisors does not assume responsibility for independently verifying such information. The Company hereby represents and warrants to Q Advisors that the information furnished by the Company for the purposes contemplated by this letter agreement will not contain any untrue statement of a material fact or omit to state any material fact necessary to make statements therein not misleading.

Any advice or opinions provided by Q Advisors may not be disclosed or referred to publicly or to any third party except in accordance with Q Advisors' prior written consent, which shall not be unreasonably withheld or denied, or as required by law or regulation. Q Advisors acknowledges that all information about the Company, its business, operations and customers that Q Advisors and its representatives learn in any way and from any source as a result of this letter agreement constitutes a trade secret, or is confidential or proprietary to the Company (the "Confidential Information"). Q Advisors shall receive and hold such Confidential Information in confidence, shall hold the same in trust, shall not disclose or furnish the same to any third party without the Company's prior written consent, and shall not use the same for any purpose other than the performance of its obligations under this letter agreement or otherwise in direct connection with the operation of this letter agreement. Notwithstanding the foregoing, Confidential Information shall not encompass information about the Company that is or becomes publicly available through no fault of Q Advisors', is already lawfully in Q Advisors' possession, is independently developed by Q Advisors, or is legitimately and lawfully obtained by Q Advisors from third parties not under obligations of confidentiality to the Company.

Upon termination of this letter agreement, Q Advisors shall return or, at the discretion of the Company, destroy all the Company's Confidential Information in its care, custody or control that is capable of being retrieved for such purpose(s) without undue burden to Q Advisors, with the exception of any materials required to be kept for FINRA or other regulatory purposes.

Q Advisors acknowledges that the Confidential Information under this letter agreement constitutes unique, valuable and special trade secret and business information of the Company, and that disclosure may cause irreparable injury to the Company. Accordingly, Q Advisors agrees that the remedy at law for any breach of the covenants contained in this paragraph 6 may be inadequate, and in recognition, agrees that the Company shall, in addition, be entitled to seek injunctive relief without bond including reasonable attorneys' fees and other court costs and expenses, in the event of a breach or threatened breach of the provisions of this paragraph 6, which relief shall be in addition to and not in derogation of any other remedies which may be available to the Company as a result of such breach.

7. **Notices.** Notice given pursuant to any of the provisions of this letter agreement shall be in writing and shall sent by overnight delivery by an internationally recognized delivery company or hand-

Mr. Jason Ellis
January 18, 2013

*Confidential*

delivered (a) to the Company at the address set forth above, to the attention of Mr. Jason Ellis, and (b) to Q Advisors at 1899 Wynkoop Street, Ste. 200, Denver, Colorado 80202, Attention: Mr. Michael Crawford. Parties may change the foregoing addresses with a prior written notice to the other party.

8.  **Construction**.  This letter agreement shall be governed by and construed in accordance with the laws of the State of Utah as applied to contracts made and performed in such State, exclusive of Utah's choice of law provisions.

9.  **Severability**.  Any determination that any provision of this letter agreement may be, or is, unenforceable shall not affect the enforceability of the remainder of this letter agreement.

10.  **Headings**.  The paragraph headings in this letter agreement have been inserted as a matter of convenience of reference and are not part of this letter agreement.

11.  **Counterparts**.  This letter agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This letter agreement may be executed by facsimile.

12.  **Third Party Beneficiaries**.  This letter agreement has been and is made solely for the benefit of the Company and Q Advisors and their respective successors and permitted assigns, and no other person shall acquire or have any right under or by virtue of this letter agreement.

13.  **Modification**.  This letter agreement may not be modified, amended or assigned except in writing, duly executed by the parties hereto.

14.  **Announcements**.  It is understood that if a Financing is completed, Q Advisors will be entitled, at its expense, to place an announcement in such publications and mailings as Q Advisors desires, stating that Q Advisors has acted as financial advisor to the Company in connection with the Financing. Any such announcements shall be subject to the Company's approval, which shall not be unreasonably withheld or delayed.

15.  **Future Sale or Recapitalization**.  In the event that Mergence elects to pursue a sale or recapitalization of the Company, whether while this letter is in effect or within thirty six (36) months of its termination, Q Advisors and Mergence shall negotiate in good faith a new engagement letter under which Q Advisors would be the Company's exclusive financial advisor for that assignment/transaction. The intent of both parties would be to agree to terms of an engagement that are commercially reasonable and that, when taken as a whole, are not materially inconsistent with those available at the time from investment banks or other organizations with experience and qualifications substantially similar to those of Q Advisors.



Mr. Jason Ellis
January 18, 2013
        18

Confidential

If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter agreement and return it to us. We look forward to working with the Company on this assignment.

Very truly yours,

Q ADVISORS LLC, a Colorado limited liability company

By:     Q Consulting & Advisors Inc., Manager

By:     _____

        Michael Crawford, Vice President

Accepted:

By      _____

Title:  President

Date:   1/18/13