# EXHIBIT 4

Utah State Court Answer and Counterclaim

Royce B. Covington (10160)
J. Mason Kjar (14227)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
rcovington@parrbrown.com
mkjar@parrbrown.com
*Attorneys for Q Advisors, LLC*

## IN THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| MERGENCE CORPORATION, dba SPRING RETAIL GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Q ADVISORS LLC, a Colorado limited liability company,<br><br>Defendant. | **ANSWER AND COUNTERCLAIM**<br><br><br>Civil No. 150901798<br><br>Judge James Gardner |

Defendant Q Advisors LLC ("Q Advisors"), for its Answer and Counterclaim against Mergence Corporation ("Mergence") states as follows:

## ANSWER

Q Advisors responds to the specifically numbered paragraphs of the Complaint as follows, specifically reserving the right to amend and/or supplement its responses and affirmative defenses as further discovery and investigation may warrant.

1. Q Advisors lacks sufficient information to admit or deny the allegations of paragraph 1 of the Complaint and therefore denies the allegations.

2. Q Advisors admits the allegations of paragraph 2 of the Complaint.

3. Q Advisors states that paragraph 3 of the Complaint contains no factual allegations to which Q Advisors can respond, only a legal conclusion. To the extent Q Advisors is required to respond, Q Advisors denies the allegations of paragraph 3 of the Complaint. Q Advisors further states that Q Advisors filed a lawsuit in Colorado before Mergence filed this Utah case, and Colorado is a more appropriate venue for this dispute.

4. Q Advisors states that paragraph 4 of the Complaint contains no factual allegations to which Q Advisors can respond, only a legal conclusion. To the extent Q Advisors is required to respond, Q Advisors denies the allegations of paragraph 4 of the Complaint. Q Advisors further states that Q Advisors filed a lawsuit in Colorado before Mergence filed this Utah case, and Colorado is a more appropriate venue for this dispute.

5. Q Advisors admits that Q Advisors performed the required services under the contract, that Q Advisors communicated with Mergence by telephone and e-mail, that Q Advisors employees visited Salt Lake City once in connection with the Spring financing, and that Q Advisors entered into three agreements with Mergence and its affiliates. Q Advisors

denies the remaining factual allegations in paragraph 5. Q Advisors further states that Q Advisors filed a lawsuit in Colorado before Mergence filed this Utah case, and Colorado is a more appropriate venue for this dispute.

6. Q Advisors lacks sufficient information to admit or deny the allegations of paragraph 6 of the Complaint and therefore denies the allegations.

7. Q Advisors admits that there was a contract between the parties concerning the sale of Simply Mac. Q Advisors lacks sufficient information concerning the corporate status and domicile of Simply Mac. Q Advisors denies the remaining allegations of paragraph 7.

8. Q Advisors admits that Q Advisors received fees in connection with the sale of Simply Mac. Q Advisors lacks sufficient information concerning the remaining factual allegations of paragraph 8 and therefore denies them.

9. Q Advisors admits that Q Advisors and Mergence Corporation dba Spring Retail Group entered into a January 18, 2013 contract concerning financing for Spring and that Mergence paid Q Advisors certain fees in connection with the Spring financing. Q Advisors lacks sufficient information to admit or deny where the closing occurred and therefore denies that allegation. Q Advisors denies any remaining factual allegations in paragraph 9.

10. Q Advisors admits that Q Advisors was paid approximately $1.36 million for investment advisory services in connection with two transactions, one involving the sale of Simply Mac and another involving the Spring financing (not the later Spring sale).

11. Q Advisors admits that Section 15 of the January 18, 2013 contract includes the quoted language.

3

12. Q Advisors lacks sufficient information to admit or deny the allegations of paragraph 12 of the Complaint and therefore denies the allegations.

13. Q Advisors admits that Mergence sold Spring to GameStop, but Q Advisors was never informed of that sale before it occurred. Q Advisors lacks information concerning where the closing of that undisclosed sale took place and therefore denies the remaining allegations of paragraph 13.

14. Q Advisors lacks sufficient information to admit or deny the allegations of paragraph 14 of the Complaint and therefore denies the allegations.

15. Q Advisors lacks sufficient information concerning whether any information or services Q Advisors provided to Mergence and Spring was used in connection with the sale of Spring. Q Advisors therefore denies the allegations of paragraph 15 of the Complaint.

16. Q Advisors admits that Mergence owes Q Advisors a fee in connection with the Spring sale that Mergence has failed and refused to pay and that Mergence has breached the contract and breached the covenant of good faith and fair dealing. Q Advisors denies the remaining factual allegations of paragraph 16 of the Complaint.

17. Q Advisors states that paragraph 17 of the Complaint contains no factual allegations to which Q Advisors can respond, only a legal conclusion. To the extent Q Advisors is required to respond, Q Advisors denies the allegations of paragraph 17 of the Complaint.

18. Q Advisors denies the allegations of paragraph 18 of the Complaint and states that after giving Mergence and its principals notice of its claim, and after Mergence and its principals refused and failed to pay Q Advisors, Q Advisors filed a lawsuit in Colorado State Court before

Mergence filed this case in Utah. Q Advisors denies any remaining factual allegations in paragraph 18 of the Complaint.

19. Q Advisors lacks sufficient information to admit or deny the allegations of paragraph 19 of the Complaint and therefore denies the allegations.

20. Q Advisors states that paragraph 20 of the Complaint contains no factual allegations to which Q Advisors can respond. To the extent Q Advisors is required to respond, Q Advisors denies the allegations of paragraph 20 of the Complaint.

21. Q Advisors admits that a dispute exists under the contract and that Mergence owes Q Advisors fees pursuant to Section 15, but otherwise denies the allegations of paragraph 21.

22. Q Advisors states that paragraph 22 of the Complaint contains no factual allegations to which Q Advisors can respond, only a legal conclusion. To the extent Q Advisors is required to respond, Q Advisors denies the allegations of paragraph 22 of the Complaint. WHEREFORE, having fully answered the Complaint, Q Advisors demands that the Complaint be dismissed, with prejudice, for no cause of action, and for an award of costs and attorney fees, and for such other and further relief as the Court deems appropriate.

## COUNTERCLAIM

Pursuant to Rule 13 of the *Utah Rules of Civil Procedure*, Q Advisors hereby counterclaims against Mergence and alleges as follows:

1. Until November 2013, Mergence directly or indirectly owned Spring Communications, Inc., which was known and did business variously as "Spring," "Spring

Mobile," "Spring Retail Group," and "Spring Communications Holding." Mergence referred to these Spring entities and its Spring Mobile business as "Spring Retail Group." Mergence also itself did business as "Spring Retail Group" at the same business address as the Spring entities at 3939 South Wasatch Boulevard in Salt Lake City.

2. Jason S. Ellis is an individual whose principal residence is in Utah. He is and has at all relevant times been President and Chief Executive Officer of Spring Mobile and numerous other Spring entities (such as Chief Executive Officer of Spring Retail Group, President of Spring Communications, Inc., President of Spring Communications Holding, Inc., and the like) and also President and Treasurer of Mergence. Ellis is and has at all relevant times been a member of the Board of Directors of Mergence. Ellis is currently President and Chief Executive Officer of Spring Mobile, which (like Mergence) is located at 3939 South Wasatch Boulevard in Salt Lake City.

3. Brett M. Bradshaw ("Bradshaw") and Vernon G. Dickman ("Dickman") are members of the Board of Directors of Mergence. Bradshaw is also currently Senior Vice President of Sales and Operations of Spring Mobile, which (like Mergence) is located at 3939 South Wasatch Boulevard in Salt Lake City. Dickman is the Founder of Spring Mobile and was, as of at least 2013, a Member of the Board of Directors and Chairman of the Board of Spring Mobile and numerous other Spring entities.

4. On information and belief, each of Ellis, Bradshaw, and Dickman were and are shareholders or beneficial owners of Mergence – Ellis (23.5%), Bradshaw (7.5%), and Dickman

(69%) – and each personally benefited from the sale of Spring in November 2013 and from the breaches described below.

5. In late 2012, Ellis and Spring's Chief Financial Officer Kent Forsgren asked Q Advisors to provide financial investment banking services to Mergence and Spring, including exploring possible financing transactions for Spring.

6. In order to convince Q Advisors to enter into the Contract, Ellis informed Q Advisors that Mergence and Spring envisioned "a larger deal with Spring all in" whereby Spring would be sold in the future. Mergence and Spring also informed Q Advisors that Mergence's largest shareholder (Dickman) intended to sell Spring "within twenty-four to thirty-six months."

7. The parties negotiated the Contract between December 20, 2012 and January 18, 2013. Ellis, who was the President of both Mergence and Spring, and Spring's Chief Financial Officer Kent Forsgren, negotiated the terms on behalf of Spring and "Mergence dba Sprint Retail Group." Q Advisors' Michael Crawford ("Crawford") negotiated on behalf of Q Advisors.

8. Ellis and Crawford each signed the Contract on or about January 18, 2013.

9. At the time Ellis signed the Contract, Ellis held himself out as an officer and agent of Mergence Corporation and an officer and agent of Spring.

10. Ellis signed the Contract as "President."

11. The Contract provides that "Mergence Corporation (dba Spring Retail Group) ("Mergence" or the "Company")" engaged Q Advisors "to provide financial advisory services on an exclusive basis (the "Services"), to the Company in connection with the private placement to qualified institutional buyers" of debt.

7

12. The Contract provides that Mergence would compensate Q Advisors for Q Advisors' work, including by retaining Q Advisors in the later sale of Spring.

13. Section 15 of the Contract provides that "In the event Mergence elects to pursue a sale or recapitalization of the Company, whether this letter is in effect or within thirty-six (36) months of its termination, Q Advisors and Mergence **shall negotiate in good faith a new engagement letter** under which Q Advisors would be the Company's exclusive financial advisor for that assignment/transaction." (Emphasis added in bold.)

14. Section 15 also reflects the parties' intent and agreement to "terms of an engagement that are commercially reasonable and that, when taken as a whole, are not materially inconsistent with those available at the time from investment banks or other organizations with experience and qualifications substantially similar to those of Q Advisors." The terms of such engagements are well-known, and the parties themselves had a history of two other engagements.

15. With Q Advisors' assistance, Spring completed a debt transaction with Fifth Third Bank in July 2013.

16. Between December 2012 and July 2013, Mergence and Spring officers and agents sent numerous e-mails to Q Advisors in Denver, Colorado in connection with the services Q Advisors provided under the Contract. Mergence and Spring officers and agents placed numerous telephone calls to Q Advisors in Denver, Colorado in connection with the services Q Advisors provided under the Contract. Q Advisors performed substantially all the services under the Contract at Q Advisors offices in Denver, Colorado.

17. Without telling Q Advisors, the officers and directors of Mergence and Spring discussed the possible sale of Spring at various times between August 2013 and November 2013.

18. Without telling Q Advisors, Mergence and Spring agreed that Spring would be sold.

19. Without telling Q Advisors, Mergence sold Spring to a public company named Gamestop Corp. in November 2013 in a transaction with a total enterprise value of approximately $97 million. Q Advisors had originally introduced Gamestop to Mergence and Spring Retail Group in connection with an earlier transaction for Mergence and Spring in 2012.

20. Mergence and Spring never informed Q Advisors that Spring was being sold at any time before Spring was sold to Gamestop in November 2013.

21. Mergence and Spring never negotiated a new engagement letter with Q Advisors in connection with the November 2013 sale of Spring, as the Contract required.

22. Mergence has never paid Q Advisors any fees in connection with the November 2013 sale of Spring.

23. Mergence has failed and refused to pay Q Advisors any fees in connection with the November 2013 sale of Spring.

24. Mergence has failed to pay Q Advisors what it owes under the Contract.

25. In accordance with Rule 8(a) of the Utah Rules of Civil Procedure, this action qualifies for the discovery allowed under Tier 3 in Rule 26(c)(3) because the amount at issue exceeds $300,000.

### First Claim for Relief
### (Breach of Contract)

26. Q Advisors incorporates by reference all of the foregoing paragraphs concerning its Counterclaims.

27. The Contract between Q Advisors and Mergence is valid and enforceable.

28. Q Advisors performed its obligations under the Contract.

29. Mergence breached its obligation to engage and pay Q Advisors in connection with the sale of Spring according to the terms of the Contract.

30. Q Advisors has suffered damage because of Mergence's breach of the Contract.

### Second Claim for Relief
### (Breach of Covenant of Good Faith and Fair Dealing)

31. Q Advisors incorporates by reference all of the foregoing paragraphs.

32. The Contract included an implied covenant of good faith and fair dealing.

33. Mergence breached the covenant of good faith and fair dealing by failing to inform Q Advisors that Mergence and Spring were pursuing a sale of Spring, by failing to inform Q Advisors that it had agreed to sell Spring, by failing to engage Q Advisors in connection with the sale, by hiding its intentions for Spring and the implications of that sale for Q Advisors under the Contract, and by its bad faith failure and refusal to pay Q Advisors what it owes under the Contract.

34. Q Advisors has suffered damage because of Mergence's breach.

## Prayer for Relief

WHEREFORE, Q Advisors requests a judgment in its favor and against Mergence, including the following:

A. Compensatory damages;

B. Costs, as provided by applicable law; and

C. Such further and additional relief as the Court may deem just and equitable.

## Jury Demand

Pursuant to Rule 38(b) of the *Utah Rules of Civil Procedure*, Q Advisors demands a trial by jury of all issues so triable in this matter.

DATED this 30th day of April, 2015.

PARR BROWN GEE & LOVELESS, P.C.

By: /s/ Royce B. Covington
Royce B. Covington
J. Mason Kjar
*Attorneys for Q Advisors, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April, 2015 I served true and correct copies of the foregoing **ANSWER AND COUNTERCLAIM** via the Utah State Court's electronic delivery service on the following:

>Steven G. Loosle
>Platte S. Nielson
>KRUSE LANDA MAYCOCK & RICKS, LLC
>136 East South Temple, Suite 2100
>P. O. Box 45561
>Salt Lake City, Utah 84145-0561
>Telephone: (801) 531-7090
>sloosle@klmrlaw.com
>pnielson@klmrlaw.com

/s/ Royce B. Covington

4815-8183-4275, v. 1