# EXHIBIT 7

Memorandum in Support of Motion for Summary Judgment filed in Utah

Steven G. Loosle (4874)
Platte S. Nielson (13312)
KRUSE LANDA MAYCOCK & RICKS, LLC
136 East South Temple, Suite 2100
P. O. Box 45561
Salt Lake City, Utah 84145-0561
Telephone: (801) 531-7090
sloosle@klmrlaw.com
pnielson@klmrlaw.com
*Attorneys for Plaintiff*

IN THE THIRD JUDICIAL DISTRICT IN AND FOR
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| MERGENCE CORPORATION, dba SPRING RETAIL GROUP, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Q ADVISORS LLC, a Colorado limited liability company,<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Civil No. 150901798<br>Judge James Gardner |

Plaintiff Mergence Corporation, dba Spring Retail Group, a Delaware corporation ("Mergence-Delaware") has moved the court for summary judgment. Mergence-Delaware hereby submits this memorandum in support of its motion.

## INTRODUCTION

In its counterclaim, Q Advisors seeks compensation related to Mergence-Delaware's sale of Spring Communications Holdings, Inc., a subsidiary ("Spring Communications"). Q Advisors asserts a claim for breach of contract and a claim for breach of the implied covenant of good faith and fair dealing.

{00301304/1 }

No agreement exists providing that Q Advisors would receive compensation from the sale of Spring Communications. Rather, the parties merely agreed that at some point in the future they would negotiate an agreement in the event of a sale or reorganization of Mergence-Delaware. Because the parties did not agree to the material terms of a contract, the agreement represents a mere "agreement to agree" and is not enforceable under Utah law. Furthermore, because no enforceable contract exists, Q Advisors may not assert a claim for breach of the covenant of good faith and fair dealing. Mergence-Delaware is entitled to summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings and depositions show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Rule 56 expressly permits a party to move for summary judgment as to "all or any part" of a claim. Utah R. Civ. P. 56(a) and (b).

The Utah Supreme Court has stressed that the rules regarding summary judgment "should be liberally interpreted to effectuate their purpose, to effect the prompt administration of justice, and to expedite litigation by avoiding needless trials where no triable issue of fact is disclosed." *National American Life Insurance Company v. Bayou Country Club, Inc.*, 403 P.2d 26, 29 (Utah 1965) (citations omitted). The purpose of a motion for summary judgment "is to provide a means of searching out the undisputed facts" to determine if the matter can be resolved "as a matter of law," thereby saving both the court and the parties from the "time, trouble, and expense of a trial." *Rich v. McGovern*, 551 P.2d 1266, 1267-68 (Utah 1976); *see also Reagan Outdoor Advertising v. Lundgren*, 692 P.2d 776, 779 (Utah 1984).

## STATEMENT OF FACTS

A.  **The Parties.**

1.  Mergence-Delaware is a Delaware corporation with its principal place of business and primary operations in Salt Lake City, Utah. Mergence-Delaware is a holding company for technology businesses. (*See* Declaration of Jason S. Ellis, ¶ 2, filed concurrently herewith.)

2.  Q Advisors is a Colorado limited liability company headquartered in Denver, Colorado. It specializes in assisting companies with business transactions such as mergers and acquisitions, debt and equity financings, and recapitalizations. Q Advisors is registered with the United States Securities and Exchange Administration as a broker-dealer. Q Advisors is also registered in the states of California and Colorado as a broker-dealer, but not in Utah.

B.  **Q Advisors Helps Mergence-Delaware Sell One of its Utah Subsidiaries, Simply Mac.**

3.  On March 15, 2012, Mergence-Delaware entered into an agreement with Q Advisors whereby Q Advisors would provide investment banking services in connection with the sale of a subsidiary of Mergence-Delaware known as Simply Mac, Inc. ("Simply Mac"), a Utah corporation ("Engagement Letter No. 1"). (*See* a copy of Engagement Letter No. 1 attached as Exhibit A to Declaration of Jason S. Ellis.)

4.  Pursuant to Engagement Letter No. 1, Q Advisors assisted Mergence-Delaware in the sale of Simply Mac, and Q Advisors received fees of $690,000 plus expenses for its services. (Declaration of Jason S. Ellis ¶ 4.)

5.  Q Advisors has never claimed that it is owed additional fees in connection with the sale of Simply Mac. (Declaration of Jason S. Ellis ¶ 4.)

C.  **Q Advisors Helps Raise Capital for Mergence-Delaware's Subsidiary Spring Communications**

6.  On January 18, 2013, Mergence-Delaware entered into a second agreement with Q Advisors whereby Q Advisors would provide investment banking services ("Engagement Letter No. 2"). (*See* a copy of Engagement Letter No. 2 attached as Exhibit C to the Declaration of Jason S. Ellis.)

7.  Pursuant to Engagement Letter No. 2, Q Advisors agreed to provide services in raising capital "in connection with a private placement to qualified institutional buyers." (*Id.* at p. 1.)

8.  Paragraph eight of Engagement Letter No. 2 provides that "This letter agreement shall be governed by and construed in accordance with the laws of the State of Utah as applied to contracts made and performed in such State . . . ." (*Id.* at p. 5)

9.  Paragraph fifteen of Engagement Letter No. 2 also provides as follows:

> In the event that Mergence elects to pursue a sale or recapitalization of the Company, whether while this letter is in effect or within thirty six (36) months of its termination, Q Advisors and Mergence shall negotiate in good faith a new engagement letter under which Q Advisors would be the Company's exclusive financial advisor for that assignment/transaction. The intent of both parties would be to agree to terms of an engagement that are commercially reasonable and that, when taken as a whole, are not materially inconsistent with those available at the time from investment banks or other organizations with experience and qualifications substantially similar to those of Q Advisors.

(*Id.*)

10. At the time of Engagement Letter No. 2, Mergence-Delaware was the 100% owner of a subsidiary known as Spring Communications. Spring Communications in turn was the 100% owner of various corporate entities, including Spring Communications, Inc., a Utah corporation ("Spring"). (Declaration of Jason S. Ellis, ¶ 7.)

11. Pursuant to Engagement Letter No. 2, Q Advisors assisted Spring Communications and its subsidiaries, including Spring, in obtaining financing from Fifth Third Bank. Spring Communications and its subsidiaries entered into a loan and security agreement with Fifth Third Bank in connection with this financing transaction. This financing transaction closed in July 2013. (*Id.* ¶¶ 10-11.)

12. Q Advisors was paid for the services it performed under Engagement Letter No. 2. Specifically, Spring Communications and related entities paid $670,000 in fees plus expenses to Q Advisors for its investment banking services in raising the debt capital pursuant to Engagement Letter No. 2. (Declaration of Jason S. Ellis, ¶ 12.)

13. Q Advisors has never claimed that it is owed additional fees related to its services in raising debt capital. (*Id.*)

**D.  Mergence-Delaware Sells Spring Communications without the Help of Q Advisors.**

14. In October 2013, Mergence-Delaware sold 100% of its shares in Spring Communications to GameStop Corp. ("GameStop"), a company with its principal office in Texas. (*Id.* ¶¶ 13-14; *see also* excerpts from the stock purchase agreement attached as Exhibit E to the Declaration of Jason S. Ellis.)

15. Q Advisors had no involvement in the transaction between Mergence-Delaware and GameStop for the sale of Spring Communications. (Declaration of Jason S. Ellis, ¶ 15.)

16. In connection with the sale of Spring Communications to GameStop, neither Mergence-Delaware nor Spring Communications had any need for Q Advisors' services or involvement. (*Id.*)

17.     Mergence-Delaware did not retain the services of any investment banker in connection with the sale of Spring Communications to GameStop because it did not need any such services for this transaction. (*Id.* ¶ 16.)

18.     In its Counterclaim, Q Advisors seeks compensation related to Mergence-Delaware's sale of Spring Communications to GameStop pursuant to paragraph 15 of Engagement Letter No. 2. (*Id.* at ¶ 14; *see also* Q Advisors Counterclaim.)

## ARGUMENT

### A. Utah Does Not Enforce Agreements to Agree

In its Counterclaim, Q Advisors seeks compensation related to Mergence-Delaware's sale of Spring Communications. There is no agreement between Mergence-Delaware and Q Advisors related to retaining and compensating Q Advisors for any services in this transaction, and Q Advisors provided no services. Q Advisors' claims for compensation are based solely upon paragraph fifteen of Engagement Letter No. 2, which provides that the parties "shall negotiate in good faith a new engagement letter." (Engagement Letter No. 2, ¶ 15.)[1] As a matter of law, Q Advisors' breach of contract claim fails because Utah law does not enforce an agreement to agree.

Utah courts have repeatedly refused to enforce an agreement to agree. In *Candland v. Oldroyd*, 67 Utah 605, 248 P. 1101 (Utah 1926), the court stated as follows:

> It is elementary that, in order for parties to contract, there must be a definite, understandable, and unequivocal meeting of the minds upon the terms of the contract; that is to say, each party must agree without reservation to what he is required to do and to what the other party is required and expected to do. So long as there is any uncertainty or indefiniteness, or future negotiations or

---

[1] Notably, paragraph fifteen on its face applies only to a sale or reorganization of Mergence-Delaware, not to a sale or reorganization of any subsidiary of Mergence-Delaware.

> considerations to be had between the parties, there is not a completed contract. In fact, there is no contract at all.

*Id.*, 67 Utah at 608. This basic principle of contract law in Utah has been endorsed repeatedly. *See, e.g., Harmon v. Greenwood*, 596 P.2d 636, 639 (Utah 1979) ("'agreements to agree' are generally unenforceable because they leave open material terms for future consideration, and the courts cannot create these terms for the parties" (citation omitted).)[2]

In *King v. Nevada Electric Inv. Co.*, 893 F. Supp. 1006 (D. Utah 1994), the court applied Utah law in circumstances identical to those before this Court. In *King*, plaintiff attempted to enforce an agreement providing that the parties "will negotiate in good faith to conclude a Mine Management Agreement...under which Andy King will operate the GENWAL MINE." *Id.* at p. 1015. The court rejected plaintiff's position and dismissed the breach of contract claim, reasoning as follows:

> A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced. This statement reflects the well-established rule in Utah that an agreement will only be enforced where its terms are set forth with sufficient definiteness to allow the court to enforce the agreement of the parties. Sufficient definiteness is required so that the court is not left with the task of writing an agreement for the parties. The court cannot fabricate the kind of a contract the parties ought to have made and enforce it. Although it is not necessary that the contract provide for every collateral matter or possible contingency, the parties themselves must have set forth with sufficient definiteness at least the essential terms of the contract.

*Id.* at 1016 (citations omitted). The court reasoned that "the agreement to negotiate in the instant case leaves open essentially every material and/or major term of the contemplated Mine

---

[2] Numerous Utah cases have refused to enforce purported contracts that were indefinite or incomplete. *See, e.g., Goggin v. Goggin*, 2011 UT 76, ¶ 37, 269 P.3d 885; *Prince, Yeates and Geldzahler v. Young*, 2004 UT 26, ¶¶ 13-14, 94 P.3d 179; *Carter v. Sorenson*, 2004 UT 33, ¶¶ 7-8, 90 P.3d 637; *Richard Barton Enterprises, Inc. v. Tsern*, 928 P.2d 368, 373 (Utah 1996).

Agreement" and lacks sufficient definiteness for enforcement. The court further reasoned that it would be "altogether too conjectural that the parties would have agreed and on what terms"... and "impossible to assess any damages, as there is no way that anyone could foresee what would have come from examining the possibility of executing a new contract, even if it were done in the utmost good faith." *Id.* at p. 1017 (quoting *Necchi v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693 (2nd Cir. 1965)).

Here, the same reasoning outlined in *King* applies. The Court cannot make an agreement for the parties. It is impossible to know what hypothetical terms the parties may have agreed to and therefore impossible for a court to determine what if any remedy would be appropriate. Indeed, it is likely no agreement could have been reached even if the parties had negotiated because Mergence-Delaware had no need of the services of a securities broker-dealer in the sale of Spring Communications.

The unenforceability of paragraph fifteen is apparent from its use of the word "negotiate" because the "hallmark of negotiation is bargaining" and "parties who have merely agreed to negotiate necessarily have retained the ability to say 'no' to the terms proposed by the other party." *Davis v. Dykman,* 938 P.2d 1002, 1009 (Alaska 1997). Here, there is no agreement that can be enforced and the Court cannot reasonably speculate about either whether an agreement would have been reached or what the terms would be.

Q Advisors cannot support its position by arguing that paragraph fifteen of Engagement Letter No. 2 provided that the parties would negotiate "terms of an engagement that are commercially reasonable." Utah cases refuse to enforce agreements providing for "reasonable" business terms because "Courts simply are not equipped to make monetary decisions impacted

by the fluctuating commercial world and are even less prepared to impose paternalistic agreements on litigants." *Cottonwood Mall Co. v. Sine*, 767 P.2d 499, 502 (Utah 1988).

**B. Q Advisors' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails Because There is No Enforceable Contract.**

Q Advisors' second claim for relief in its Counterclaim asserts a claim for breach of the covenant of good faith and fair dealing. Q Advisors seeks through this claim to obtain compensation related to Mergence-Delaware's sale of Spring Communications. This claim, however, fails because there is no contract requiring Mergence-Delaware to compensate Q Advisors related to Mergence-Delaware's sale of Spring Communications.

Utah recognizes that most contracts include an implied covenant of good faith and fair dealing which requires that the parties "refrain from actions that will intentionally 'destroy or injure the other party's right to receive the fruits of the contract.'" *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 43, 104 P.3d 1226 (quoting *St. Benedicts Development v. St. Benedicts Hospital*, 811 P.2d 194, 199 (Utah 1991)). This implied covenant, however, is very limited:

> First, this covenant cannot be read to establish new, independent rights or duties to which the parties did not agree *ex ante*. Second, this covenant cannot create rights and duties inconsistent with express contractual terms. Third, this covenant cannot compel a contractual party to exercise a contractual right "to its own detriment for the purpose of benefitting another party to the contract." Finally, we will not use this covenant to achieve an outcome in harmony with the court's sense of justice but inconsistent with the express terms of the applicable contract.

*Oakwood Village LLC*, 2004 UT 101, ¶ 45 (citations omitted) (quoting *Olympus Hills Shopping Ctr. V. Smith's Food & Drug Ctrs.*, 889 P.2d 445, 457, n. 13 (Utah App. 1994). Utah cases "set a high bar for the invocation" of the implied covenant of good faith and fair dealing. *Young Living Essential Oils, LC v. Marin*, 2011 UT 64, ¶ 10, 266 P.3d 814.

Q Advisors' claim for breach of the implied covenant of good faith and fair dealing must fail for the same reasons its claim for breach of contract fails. The parties did not agree to terms whereby Mergence-Delaware would compensate Q Advisors related to the sale of Spring Communications, and the parties merely agreed to negotiate a new contract in the future. With this set of undisputed facts, recognizing a claim for breach of the implied covenant would violate all of the limitations articulated by the Utah Supreme Court in *Oakwood*. In recognizing such a claim, the Court would be establishing "new, independent rights or duties to which the parties did not agree *ex ante*" and "rights and duties inconsistent with express contractual terms." Since at best the parties agreed to "negotiate," the parties retained the right to say no to any agreement. Therefore, if an implied covenant were recognized, it would mean that Mergence-Delaware would be compelled to exercise its contractual right to make an agreement "to its own detriment." Finally, since the parties made no agreement, the only way a remedy could be imposed is if the court were to order "an outcome in harmony with the court's sense of justice."

In *King,* the court also addressed a claim for breach of the duty of good faith and fair dealing. Like Q Advisors, Plaintiff contended that the duty was breached because of failure to negotiate a mine agreement. The court rejected this claim, reasoning that

> [T]he court finds as a matter of law that the agreement to negotiate is unenforceably vague and indefinite. Consequently, there is no enforceable contract to support plaintiff's claim for breach of the attendant duty of good faith and fair dealing.

*King*, 893 F. Supp. at 1020. The court was simply following the well-established principle that the covenant of good faith and fair dealing cannot be used "to make a better contract for the parties than they made for themselves." *Brown v. Moore,* 973 P.2d 950, 954 (Utah 1998). Absent an enforceable, underlying agreement to which the implied covenant can attach, no claim

for breach of the implied covenant of good faith and fair dealing can exist. *See Laudano v. 214 South Street Corp.,* 608 F. Supp. 2d 185, 195 (D. Mass. 2009) (because of indefiniteness of the alleged oral contract, no contract existed, and no claim could be made for breach of the implied covenant.)

## CONCLUSION

For the reasons set forth above, Mergence-Delaware is entitled to summary judgment and dismissal of all claims of Q Advisors with prejudice.

DATED this 20th day of May, 2015.

KRUSE LANDA MAYCOCK & RICKS, LLC

/s/Steven G. Loosle
Steven G. Loosle
Platte S. Nielson
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2015, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court by using the electronic filing system which will send a notice of electronic filing to the following:

>Royce B. Covington
>J. Mason Kjar
>Parr Brown Gee & Loveless, P.C.
>101 South 200 East, Suite 700
>Salt Lake City, UT  84111
>*Attorneys for Q Advisors, LLC*

/s/Lynn Javadi