EXHIBIT A



An Investment Banking Partnership

ENGAGEMENT LETTER

March 15, 2012

Mr. Jason Ellis
Chief Executive Officer
Mergence Corporation (dba Spring Retail Group)
3939 South Wasatch Boulevard
Suite 1
Salt Lake City, UT 84124

Dear Jason:

Pursuant to our recent discussions, I am pleased to confirm the arrangements under which Mergence Corporation (dba Spring Retail Group) ("Mergence") will engage Q Advisors LLC ("Q Advisors") to provide financial advisory services on an exclusive basis (the "Services"), to Mergence in connection with Mergence's review of strategic alternatives available to it regarding its subsidiary Simply Mac, Inc. ("Simply Mac" or the "Company"), including the possible acquisition, by way of a purchase, business combination, merger or other transaction (the "Transaction") by a corporation or other business entity of all or part of the Company's outstanding capital stock or all or substantially all of the Company's assets.

1. **Retention.** During the term of our engagement, Q Advisors will provide Mergence or the Company with a range of financial advisory services in connection with the Transaction. More specifically, in connection with the proposed Transaction, Q Advisors will (a) prepare an Offering Memorandum or other suitable offering materials for use in informing prospective purchasers about the Company, (b) advise and assist the Company in preparation of a presentation which will be given by management to selected qualified prospective purchasers, (c) develop a plan for marketing the Company including the identification and contact of potential qualified purchasers for the Company, (d) assist in the negotiation of the Transaction, (e) advise the Company, Mergence or their respective Boards of Directors, if requested, on the financial aspects of any proposed Transaction, (f) work with legal counsel, as appropriate, on any letter of intent or definitive agreement and until the Transaction is completed, and (g) attend meetings of the Board of Directors or stockholders of Mergence or the Company when requested.

   During the term of this engagement, Q Advisors will serve as the exclusive representative to Mergence and the Company in a Transaction. Mergence and the Company agree to refer any potential financial and strategic partners to Q Advisors, including those parties that contact Mergence or the Company regarding a Transaction.

   Mergence and the Company shall have final determination over any information and strategies developed by Q Advisors. In providing the Services, Q Advisors acknowledges that all terms and conditions of any Transaction shall be subject to the approval of Mergence's or the Company's management or Board of Directors.

2. **Fees and Expenses.**

   2.1 **Monthly Retainer.** In consideration of the Services rendered to Mergence and the Company under this letter agreement, Mergence or the Company shall pay Q Advisors a monthly retainer of $10,000 payable in advance. All monthly retainer payments (or portions thereof) paid pursuant to this paragraph shall be credited against any Transaction Fee that ultimately may be due, but shall not be refunded if a Transaction is not ultimately consummated.

   2.2 **Transaction Fee.** On consummation of the Transaction, Mergence or the Company shall pay Q Advisors a cash fee (the "Transaction Fee") equal to the aggregate sum of:

   a) 3.5% of the Transaction Value (defined below) up to and including $15 million; and

   b) 5.5% of the portion of the Transaction Value greater than $15 million.

   For example, if Mergence or the Company closes a Transaction with a Transaction Value of $20 million, the Transaction Fee would be calculated as follows: (.035 x $15,000,000) + (.055 x $5,000,000), which equals $525,000 plus $275,000, or a total of $800,000.

   If, however, the Transaction is consummated with (a) ZAGG Inc.; (b) an affiliate company of ZAGG, Inc.; and/or (c) a new company owned by the current shareholders of ZAGG, Inc. (all of which are subsequently referred to as "ZAGG"), the resulting fee will be reduced by 10.0%, subject to the minimum fee described at the bottom of this section 2.2. For example, if Mergence or the Company closes a Transaction with ZAGG with a Transaction Value of $20 million, the Transaction Fee would be $720,000, or 10.0% less than the $800,000 fee calculated above.

   For purposes of this letter agreement, the term "Transaction Value" means the sum of (a) the total amount of cash paid, directly or indirectly, for the assets, business or capital stock of the Company and any indebtedness or other non-ordinary course liabilities of the Company assumed by the purchaser; (b) any assets, securities, Corporate Earnout (defined below) or other property or rights transferred, directly or indirectly, in payment for the assets, business or stock of the Company; and (c) the aggregate amount of any dividends or other distributions declared by the Company with respect to its stock after the date hereof, other than normal recurring cash dividends in amounts not materially greater than currently paid. "Corporate Earnout" shall be defined as any cash, securities, or other remuneration received by Mergence, the Company, their affiliates, or stockholders as a result of the future performance of the Company, but excluding compensation resulting from reasonable employment agreements.

   So long as the consideration in the Transaction includes sufficient cash, the Transaction Fee will be paid from the proceeds of the Transaction. If, however, the cash consideration is not sufficient, Mergence or the Company will pay any resulting shortfall from an alternative source of cash.

   The Transaction Fee will become payable by Mergence or the Company immediately upon consummation of (a) the Transaction or (b) the acquisition, directly or indirectly, by another person or entity, in a single transaction or series of related transactions, of (i) all or a substantial portion of the assets or business of the Company or (ii) securities representing 50% or more of the total voting power of the Company in the election of Directors.

   In no event shall the Transaction Fee be less than $550,000, if Mergence, the Company, or their affiliates or stockholders in the Transaction receive any proceeds as a result of closing a transaction.

Mr. Jason Ellis  
March 15, 2012

*Confidential*

2.3 **Expense Reimbursement.** In addition, whether or not the Transaction closes, Mergence or the Company will reimburse Q Advisors, on a monthly basis, for reasonable out-of-pocket expenses incurred by Q Advisors in connection with this letter agreement. Typically, these expenses may include travel, lodging, telephone and outside services incurred by Q Advisors. In no event shall Q Advisors incur any single expense in excess of $2,000 without the prior consent of Mergence or the Company.

Q Advisors anticipates that monthly reimbursable expenses will not be greater than $4,000, and it will make a good-faith effort to promptly alert Mergence or the Company if it expects expenses to exceed that level.

3. **Termination.** Services hereunder may be terminated with or without cause by either party at any time on 30 days' written notice and without liability or continuing obligation to the other, except for any compensation earned and expenses incurred by Q Advisors to the date of termination, and except in the case of termination by Mergence or the Company for any reason other than the material breach of this letter agreement by Q Advisors, for Q Advisors' rights under the "tail" provisions described below in this paragraph 3. After termination of Q Advisors' engagement for any reason, Q Advisors will provide Mergence or the Company with a list of parties with whom Q Advisors has been in contact on Mergence's or the Company's behalf (the "Tail List"). If within twelve (12) months following the termination of Q Advisors' engagement, the Company (a) closes a Transaction; or (b) (i) enters into a Letter of Intent, Memorandum of Understanding, or substantially similar agreement (even if such agreement is non-binding) describing key terms and conditions of a Transaction; and (b) (ii) closes a Transaction with that same entity, or an affiliate thereof, (whether or not that closing occurs within the twelve (12) month time period referenced above) and the Transaction is with any party who is on the Tail List, then Q Advisors shall be entitled to the Transaction Fee as set forth in paragraph 2.2 of this letter agreement. Notwithstanding any termination of this letter agreement, the numbered paragraphs 2, 3, 5 and 6 of this letter agreement will remain operative regardless of such termination.

4. **Independent Contractor.** Q Advisors will act under this letter agreement as an independent contractor with duties solely to Mergence and the Company, and nothing herein shall be construed as creating any other relationship between Mergence or the Company and Q Advisors hereto including, but not limited to, partnership, agency or joint venture. The relationship between Q Advisors and Mergence or the Company under this letter agreement shall be solely that of consultant and client. Mergence or the Company, their agents, employees, representatives or affiliates shall under no circumstance be deemed agents or representatives of Q Advisors. None of Q Advisors or its agents, employees, representatives or affiliates shall be deemed for any purpose to be employees of Mergence or the Company. Furthermore, it is understood that Q Advisors is being engaged hereunder solely to provide the Services to Mergence and the Company and that Q Advisors is not acting as an agent or fiduciary of, and shall have no duties or liability to, the directors of Mergence or the Company, the equity holders of Mergence or the Company or any other third party in connection with its engagement hereunder, all of which are expressly waived.

5. **General Indemnity.** Mergence and the Company agree to indemnify Q Advisors and its members, directors, officers, agents and employees (each, an "Indemnified Party") of and from any losses, actions, claims, damages or liabilities (or actions in respect thereof) resulting from any claim raised by a third party relating to or arising out of the performance of the Services noted hereunder, other than the gross negligence or wilful misconduct by an Indemnified Party, and will reimburse the Indemnified Party hereunder for all expenses (including reasonable attorneys' fees and expenses) reasonably incurred by the Indemnified Party in connection with investigating, preparing or

Mr. Jason Ellis  
March 15, 2012

*Confidential*

defending any such action or claim. Mergence and the Company agree that neither Q Advisors nor any Indemnified Party shall have any liability to Mergence or the Company for or in connection with this engagement except for any such liability for losses, actions, claims, damages, liabilities or expenses incurred by Mergence or the Company that result primarily from Q Advisors' gross negligence or wilful misconduct. In the event that an indemnifiable claim arises hereunder, the Indemnified Party shall give prompt written notice of the claim to Mergence or the Company, and Mergence or the Company shall have the right to assume the defense of such claim provided that there is no conflict of interest between Mergence or the Company, on the one hand, and the Indemnified Party on the other hand. Neither Mergence nor the Company will settle any action by a third party against any Indemnified Party relating to this engagement without securing appropriate releases or other protection for such Indemnified Party. No Indemnified Party will settle any action without the consent of Mergence or the Company, which consent shall not be unreasonably withheld.

If the indemnification provided for in the preceding paragraph shall for any reason be unavailable to an otherwise Indemnified Party, then Mergence or the Company shall, in lieu of indemnifying such Indemnified Party, contribute to the amount paid or payable by such Indemnified Party (i) in such proportion as shall be appropriate to reflect the relative benefits received by Mergence or the Company on the one hand and Q Advisors on the other from the engagement or the Transaction or (ii) if the allocation provided by clause (i) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of Mergence or the Company on the one hand and Q Advisors on the other with respect to the conduct or omission which resulted in a loss, action, claim, damage or liability, or action in respect thereof, as well as any other relevant equitable considerations. The relative benefits received by Mergence or the Company on the one hand and Q Advisors on the other with respect to the Transaction shall be deemed to be in the same proportion as the aggregate consideration or value received by Mergence or the Company in the Transaction (as the same may be reduced by damages incurred as a result thereof) bears to the Transaction Fee received by Q Advisors under this letter agreement. Under no circumstances shall Q Advisors or any Indemnified Party be liable for any indirect, consequential, incidental, special, punitive or exemplary damages arising from any losses, actions, claims, damages or liabilities (or actions in respect thereof) resulting from any claim raised by a third party relating to or arising out of the performance of the Services, regardless of whether Q Advisors has been apprised of the likelihood of such damages occurring.

In the event Mergence or the Company requests Q Advisors to deliver certain documents and information relating to this engagement via electronic transmissions, Mergence and the Company acknowledge and agree that the privacy and integrity of electronic transmissions cannot be guaranteed due to the possibility that third parties could intercept, view or alter such electronic transmissions. To the extent that any documents or information relating to this engagement are transmitted electronically, Mergence and the Company agree to release Q Advisors from any loss or liability incurred in connection with the electronic transmission of any such documents and information, including the unauthorized interception, alteration or fraudulent generation and transmission of electronic transmissions by third parties. Under no circumstances shall Q Advisors be liable for any ordinary, direct, indirect, consequential, incidental, special, punitive or exemplary damages arising out of the foregoing, regardless of whether Q Advisors has been apprised of the likelihood of such damages occurring.

6. **Reliance on Information; Confidentiality.** Mergence and the Company understand and confirm (a) that Q Advisors will be using and relying on data, material and information about the Company furnished to Q Advisors by Mergence or the Company, its employees and representatives and (b) that Q Advisors does not assume responsibility for independently verifying such information. Mergence and the Company hereby represent and warrant to Q Advisors that the information furnished by

Mr. Jason Ellis  
March 15, 2012

*Confidential*

Mergence or the Company for the purposes contemplated by this letter agreement will not contain any untrue statement of a material fact or omit to state any material fact necessary to make statements therein not misleading.

Any advice or opinions provided by Q Advisors may not be disclosed or referred to publicly or to any third party except in accordance with Q Advisors' prior written consent, which shall not be unreasonably withheld or denied, or as required by law or regulation. Q Advisors acknowledges that all information about Mergence or the Company, its business, operations and customers that Q Advisors and its representatives learn in any way and from any source as a result of this letter agreement constitutes a trade secret, or is confidential or proprietary to Mergence and the Company ("Confidential Information"). Q Advisors shall receive and hold such Confidential Information in confidence, shall hold the same in trust, shall not disclose or furnish the same to any third party without Mergence's or the Company's prior written consent, and shall not use the same for any purpose other than the performance of its obligations under this letter agreement or otherwise in direct connection with the operation of this letter agreement.

Upon termination of this letter agreement, Q Advisors shall return or, at the discretion of Mergence or the Company, destroy all the Confidential Information in its care, custody or control that is capable of being retrieved for such purpose(s) without undue burden to Q Advisors, with the exception of any materials required to be kept for FINRA or other regulatory purposes. Notwithstanding the foregoing, the definition of Confidential Information shall not encompass information about Mergence or the Company that is or becomes publicly available through no fault of Q Advisors', is already lawfully in Q Advisors' possession, is independently developed by Q Advisors, or is legitimately and lawfully obtained by Q Advisors from third parties not under obligations of confidentiality to Mergence or the Company.

Q Advisors acknowledges that the Confidential Information under this letter agreement constitutes unique, valuable and special trade secret and business information of Mergence or the Company, and that disclosure may cause irreparable injury to Mergence or the Company. Accordingly, Q Advisors agrees that the remedy at law for any breach of the covenants contained in this paragraph 6 may be inadequate, and in recognition, agrees that Mergence or the Company shall, in addition, be entitled to seek injunctive relief without bond including reasonable attorneys' fees and other court costs and expenses, in the event of a breach or threatened breach relating thereto, which relief shall be in addition to and not in derogation of any other remedies which may be available to Mergence or the Company as a result of such breach.

7. **Notices.** Notice given pursuant to any of the provisions of this letter agreement shall be in writing and shall be sent by overnight delivery by an internationally recognized delivery company or hand-delivered (i) to Mergence or the Company at the address set forth above, to the attention of Mr. Kent Forsgren, and (ii) to Q Advisors at 1899 Wynkoop Street, Ste. 200, Denver Colorado 80202, Attention: Mr. Michael Crawford. Parties may change the foregoing addresses by prior written notice to the other party.

8. **Construction.** This letter agreement shall be governed by and construed in accordance with the laws of the State of Utah as applied to contracts made and performed in such State, exclusive of Utah's choice of law provisions.

9. **Severability.** Any determination that any provision of this letter agreement may be, or is, unenforceable shall not affect the enforceability of the remainder of this letter agreement.

10. **Headings.** The paragraph headings in this letter agreement have been inserted as a matter of convenience of reference and are not part of this letter agreement.

Mr. Jason Ellis  *Confidential*
March 15, 2012

11. **Counterparts.** This letter agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument. This letter agreement may be executed by facsimile.

12. **Third Party Beneficiaries.** This letter agreement has been and is made solely for the benefit of Mergence, the Company and Q Advisors and their respective successors and permitted assigns, and no other person shall acquire or have any right under or by virtue of this letter agreement.

13. **Mergence's Authority.** Mergence acknowledges and agrees that (a) as the Company's controlling shareholder, Mergence has the authority to bind the Company to the terms and conditions of this letter agreement; and (b) Mergence will take whatever steps are necessary to cause the Company to comply with its obligations and duties under this letter agreement.

14. **Modification.** This letter agreement may not be modified or amended except in writing, duly executed by the parties hereto.

15. **Announcements.** It is understood that if any Transaction is completed, Q Advisors will be entitled, at its expense, to place an announcement in such publications and mailings as Q Advisors desires, stating that Q Advisors has acted as financial advisor to Mergence and the Company in connection with the Transaction. Any such announcements shall be subject to Mergence or the Company's approval, which shall not be unreasonably withheld or delayed. Based on the sensitive nature of a potential Transaction and the Company's current relationship with Apple, Mergence or the Company may require that the Transaction price be kept confidential and not included in any public announcement by Q Advisors.

If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter agreement and return it to us. We look forward to working with Mergence and the Company on this assignment.

Very truly yours,

Q ADVISORS LLC, a Colorado limited liability company

By: Q Consulting & Advisors Inc., Manager

By: *[signature]*

Michael Crawford, Vice President

Accepted:

Mergence Corporation (dba Spring Retail Group)

By: _____

Title: _____

Date: _____