EXHIBIT D

EXECUTION VERSION

LOAN AND SECURITY AGREEMENT

by and among

SPRING COMMUNICATIONS HOLDING, INC.,

SPRING COMMUNICATIONS - BLUE WIRE, INC.,

SPRING COMMUNICATIONS DSW, INC.,

SPRING COMMUNICATIONS IDAHO, INC.,

SPRING COMMUNICATIONS - ILLINOIS, INC.,

SPRING COMMUNICATIONS MNP, INC.,

SPRING COMMUNICATIONS NEVADA, INC.,

SPRING COMMUNICATIONS, INC.,

SPRING COMMUNICATIONS - TEXAS, INC.,

and

FIFTH THIRD BANK

July 19, 2013

{Z0014373/12 }

## TABLE OF CONTENTS

Page

1. DEFINITIONS. ............................................................................................................................1

    1.1  General Terms. ...........................................................................................................1
    1.2  Accounting Terms. ...................................................................................................26
    1.3  Other Terms Defined in Colorado Uniform Commercial Code. .............................26
    1.4  Other Definitional Provisions; Rules of Interpretation. ...........................................27

2. CREDIT. ...................................................................................................................................27

    2.1  Revolving Loan and Letter of Credit Facilities. ......................................................27
    2.2  Term Loan Facilities. ...............................................................................................28
    2.3  Mandatory Payments; Prepayments. ........................................................................29
    2.4  Borrowers' Loan Account. .......................................................................................31
    2.5  Statements. ...............................................................................................................32
    2.6  Interest and Fees. .....................................................................................................32
    2.7  Method for Making Payments. ................................................................................34
    2.8  Termination of Revolving Commitment. .................................................................34
    2.9  Advance Types. ........................................................................................................34
    2.10 New LIBOR Rate Advances; Continuation of LIBOR Rate Advances; Conversion of Advance Types. ......................................................................................................35
    2.11 Determination of Interest Period. .............................................................................35
    2.12 Additional Costs, Etc. With Respect to LIBOR Rate Advances and Index Rate Advances. .................................................................................................................36
    2.13 Indemnification for Losses. .....................................................................................37
    2.14 Payments to be Free of Deductions. ........................................................................38
    2.15 Capital Adequacy. ....................................................................................................38
    2.16 Certificate. ................................................................................................................39

3. CONDITIONS OF ADVANCES. ............................................................................................39

    3.1  Any Borrower's Written Request - Revolving Loan and Letters of Credit. ............39
    3.2  Financial Condition. ................................................................................................40
    3.3  No Event of Default. ................................................................................................40
    3.4  Representations and Warranties True and Correct. .................................................40
    3.5  Conditions to Initial Extension of Credit. ................................................................40
    3.6  [Reserved] ................................................................................................................40
    3.7  Other Requirements. ................................................................................................40

4. REPRESENTATIONS AND WARRANTIES ........................................................................40

    4.1  Existence and Power. ...............................................................................................41
    4.2  Corporate Authorization; No Contravention. ..........................................................41
    4.3  Governmental Authorization; Compliance. .............................................................41
    4.4  Binding Effect. .........................................................................................................42

|  |  |  |
|---|---|---|
| 4.5 | Litigation. | 42 |
| 4.6 | No Default. | 42 |
| 4.7 | ERISA Compliance. | 42 |
| 4.8 | Use of Proceeds; Margin Regulations. | 43 |
| 4.9 | Title to Properties. | 43 |
| 4.10 | Taxes. | 43 |
| 4.11 | Financial Condition. | 43 |
| 4.12 | Environmental Matters. | 44 |
| 4.13 | Collateral Documents. | 44 |
| 4.14 | Regulated Entities. | 45 |
| 4.15 | Labor Relations. | 45 |
| 4.16 | Copyrights, Patents, Trademarks and Licenses, Etc. | 45 |
| 4.17 | Subsidiaries and Parent. | 45 |
| 4.18 | Brokers' Fees; Transaction Fees. | 46 |
| 4.19 | Insurance. | 46 |
| 4.20 | Full Disclosure. | 46 |
| 4.21 | Collateral. | 47 |
| 4.22 | Solvency. | 47 |
| 4.23 | Legal Status. | 47 |
| 4.24 | Other Names. | 48 |
| 4.25 | [Reserved] | 48 |
| 4.26 | [Reserved] | 48 |
| 4.27 | [Reserved] | 48 |
| 4.28 | Anti-Terrorism Laws. | 48 |
| 4.29 | Survival of Warranties. | 49 |
| 5. | AFFIRMATIVE COVENANTS. | 49 |
| 5.1 | Financial Statements. | 49 |
| 5.2 | Borrowing Base Certificates; Reporting. | 50 |
| 5.3 | Certificates; Other Information. | 51 |
| 5.4 | Notices. | 52 |
| 5.5 | Preservation of Existence, Etc. | 53 |
| 5.6 | Maintenance of Property. | 53 |
| 5.7 | Borrowers' Property Insurance and Business Interruption Insurance. | 53 |
| 5.8 | Payment of Liabilities. | 58 |
| 5.9 | Compliance with Laws. | 58 |
| 5.10 | Inspection of Property and Books and Records. | 59 |
| 5.11 | Use of Proceeds. | 59 |
| 5.12 | Further Assurances. | 59 |
| 5.13 | Amendment to Schedules and Representations and Warranties. | 59 |
| 5.14 | Locations of Collateral. | 60 |
| 5.15 | Bank's Costs and Expenses as Additional Liabilities. | 60 |
| 5.16 | Yield Protection. | 60 |
| 5.17 | Landlord Consents and Waivers. | 61 |
| 5.18 | Primary Depository. | 61 |
| 5.19 | Remittance and Lock Box Accounts. | 62 |

|   |   |   |   |
|---|---|---|---|
|   | 5.20 | Anti-Terrorism Laws. | 63 |
|   | 5.21 | Rate Management Agreements. | 63 |
|   | 5.22 | Post-Closing Matters. | 63 |
|   | 5.23 | Management Fees. | 63 |
|   | 5.24 | Permitted Subsidiaries. | 63 |
| 6. | NEGATIVE COVENANTS. | | 64 |
|   | 6.1 | Encumbrances. | 64 |
|   | 6.2 | Indebtedness. | 65 |
|   | 6.3 | Disposition of Assets. | 65 |
|   | 6.4 | Consolidations and Mergers. | 66 |
|   | 6.5 | Loans and Investments. | 67 |
|   | 6.6 | Transactions with Affiliates. | 67 |
|   | 6.7 | Margin Stock. | 67 |
|   | 6.8 | Contingent Obligations. | 68 |
|   | 6.9 | Compliance with ERISA. | 68 |
|   | 6.10 | Collective Bargaining Agreements. | 68 |
|   | 6.11 | Restricted Payments. | 68 |
|   | 6.12 | Change in Business; Ordinary Course of Business. | 69 |
|   | 6.13 | Change in Structure. | 69 |
|   | 6.14 | Accounting Changes. | 69 |
|   | 6.15 | [Reserved] | 69 |
|   | 6.16 | Legal Status. | 70 |
|   | 6.17 | Fiscal Periods. | 70 |
|   | 6.18 | Subsidiaries. | 70 |
|   | 6.19 | Identified Employees Compensation. | 70 |
| 7. | FINANCIAL COVENANTS. | | 70 |
|   | 7.1 | Minimum Fixed Charge Coverage Ratio. | 70 |
|   | 7.2 | Maximum Total Leverage Ratio. | 71 |
|   | 7.3 | Unfinanced Capital Expenditures. | 71 |
|   | 7.4 | Minimum Adjusted EBITDA. | 71 |
| 8. | COLLATERAL. | | 71 |
|   | 8.1 | Security Interest. | 71 |
|   | 8.2 | Perfection of Security Interests in Collateral. | 72 |
|   | 8.3 | Loss of Value of Collateral. | 72 |
|   | 8.4 | Setoff. | 72 |
|   | 8.5 | Cash Collateral. | 73 |
|   | 8.6 | Verification of Accounts. | 73 |
|   | 8.7 | Notification to Account Debtors and Others. | 73 |
|   | 8.8 | Inventory Records. | 74 |
|   | 8.9 | Equipment Records. | 74 |
|   | 8.10 | Risk of Loss and Damage. | 74 |
|   | 8.11 | Other Actions. | 74 |

|  |  |  |
|---|---|---|
| 8.12 | Real Property. | 77 |
| 8.13 | Inventory Covenants. | 78 |
| 8.14 | [Reserved] | 79 |
| 8.15 | Collection of Accounts and Payments. | 79 |
| 8.16 | Collateral Protection Expenses. | 79 |
| 9. | DEFAULT, RIGHTS AND REMEDIES OF BANK. | 80 |
| 9.1 | Defaults. | 80 |
| 9.2 | Rights and Remedies Generally. | 84 |
| 9.3 | Entry Upon Premises and Access to Information. | 86 |
| 9.4 | Sale or Other Disposition of Collateral by Bank. | 86 |
| 9.5 | Waiver of Demand. | 87 |
| 9.6 | Appointment of Bank as Borrowers' Attorney-in-Fact. | 87 |
| 9.7 | Standards for Exercising Rights and Remedies. | 87 |
| 9.8 | WAIVER OF NOTICE. | 88 |
| 10. | MISCELLANEOUS. | 88 |
| 10.1 | Waiver. | 88 |
| 10.2 | Costs and Attorneys' Fees. | 89 |
| 10.3 | Expenditures by Bank. | 89 |
| 10.4 | Custody and Preservation of Collateral. | 90 |
| 10.5 | Reliance by Bank. | 90 |
| 10.6 | Parties. | 90 |
| 10.7 | CHOICE OF LAW. | 90 |
| 10.8 | CONSENT TO JURISDICTION. | 91 |
| 10.9 | SERVICE OF PROCESS. | 91 |
| 10.10 | Advice of Counsel. | 92 |
| 10.11 | Severability. | 92 |
| 10.12 | Application of Payments. | 92 |
| 10.13 | Marshaling; Payments Set Aside. | 92 |
| 10.14 | Section Titles. | 93 |
| 10.15 | Continuing Effect. | 93 |
| 10.16 | Notices. | 93 |
| 10.17 | Equitable Relief. | 94 |
| 10.18 | Indemnification. | 94 |
| 10.19 | Counterparts. | 95 |
| 10.20 | Entire Agreement. | 95 |
| 10.21 | Patriot Act Notice. | 95 |
| 10.22 | WAIVER OF JURY TRIAL AND BOND. | 96 |
| 10.23 | Joint and Several Liability. | 96 |

# EXHIBITS AND SCHEDULES

## EXHIBITS

| | |
|---|---|
| Exhibit 2.1(a) | Form of Revolving Note |
| Exhibit 2.2(a) | Form of Term Note A |
| Exhibit 2.2(b) | Form of Term Note B |
| Exhibit 2.10 | Form of Notice of LIBOR Rate Continuation/Conversion |
| Exhibit 3.5 | Closing Conditions |
| Exhibit 5.3(b) | Form of Compliance Certificate |
| Exhibit 5.17 | Form of Landlord Waiver and Consent |
| Exhibit 5.24 | Form of Joinder Agreement |

## SCHEDULES

| | |
|---|---|
| Schedule 4.2 | Equity Ownership; Breaches or Liens Created by Loan and Security Agreement and Other Financing Agreements |
| Schedule 4.5 | Litigation |
| Schedule 4.7 | Qualified Plans |
| Schedule 4.12 | Hazardous Materials |
| Schedule 4.16 | Patents, Trademarks, Service Marks, Copyrights and Licensed Intellectual Property |
| Schedule 4.17 | Subsidiaries |
| Schedule 4.21 | Collateral Locations |
| Schedule 4.23 | Legal Status |
| Schedule 4.24 | Corporate and Fictitious Names |
| Schedule 5.22 | Post-Closing Matters |
| Schedule 6.1 | Liens |
| Schedule 6.2 | Indebtedness |
| Schedule 6.5 | Loans and Investments |
| Schedule 6.6 | Affiliate Transactions |
| Schedule 8.11 | Commercial Tort Claims |

# LOAN AND SECURITY AGREEMENT

THIS LOAN AND SECURITY AGREEMENT, together with all exhibits and schedules attached hereto and hereby made a part hereof (this "Agreement"), is made as of July 19, 2013 by and among SPRING COMMUNICATIONS HOLDING, INC., a Delaware corporation ("SCH"), SPRING COMMUNICATIONS - BLUE WIRE, INC., a Utah corporation ("SCBW"), SPRING COMMUNICATIONS DSW, INC., a Delaware corporation ("SCDSW"), SPRING COMMUNICATIONS IDAHO, INC., a Utah corporation ("SCID"), SPRING COMMUNICATIONS - ILLINOIS, INC., a Utah corporation ("SCILL"), SPRING COMMUNICATIONS MNP, INC., a Utah corporation ("SCMNP"), SPRING COMMUNICATIONS NEVADA, INC., a Utah corporation ("SCN"), SPRING COMMUNICATIONS, INC., a Utah corporation ("SCI"), and SPRING COMMUNICATIONS - TEXAS, INC., a Utah corporation ("SCT", and together with SCH, SCBW, SCDSW, SCID, SCILL, SCMNP, SCN, SCI and each other Person who becomes a party to this Agreement pursuant to a Joinder Agreement, "Borrowers", and each a "Borrower"), and FIFTH THIRD BANK, an Ohio banking corporation ("Bank").

## W I T N E S S E T H:

**WHEREAS**, Borrowers desire to borrow monies and obtain other financial accommodations from Bank, and, pursuant to Borrowers' request, Bank is willing to make certain loans and to extend credit to Borrowers of up to such amount upon the terms and conditions set forth herein;

**NOW, THEREFORE**, in consideration of the terms and conditions contained herein, and of any loans or extensions of credit heretofore, now or hereafter made to or for the benefit of Borrowers by Bank, and for other consideration, the receipt and adequacy of which are hereby acknowledged, each Borrower and Bank hereby agree as follows:

1. **DEFINITIONS**.

    1.1  General Terms.

    When used herein, the following terms shall have the following meanings:

    "Account Debtor" means any Person who is obligated on or under an Account.

    "Accounts" means, whether now owned or existing or hereafter acquired or arising, all accounts (as defined in the Code) and all other present and future rights of a Borrower to payment for goods sold or leased or for services rendered, and whether or not they have been earned by performance.

    "ACH Direction Letter" shall have the meaning given such term in Section 5.19.

    "Acquisition" means any transaction or series of related transactions for the purpose of or resulting, directly or indirectly, in (a) the acquisition of all or substantially all of the Property of a Person, or of any business or division of a Person, (b) the acquisition of in excess of fifty percent (50%) of the Equity Interests of any Person or otherwise causing any Person to become a

{Z0014373/12 }

2.6(a), shall be part of the Liabilities, payable upon demand or upon the automatic acceleration of the Liabilities, and secured by the Collateral.

### 10.4   Custody and Preservation of Collateral.

Without limiting Bank's duties set forth in Section 8.16, Bank shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral in its possession if it takes such action for that purpose as a Borrower shall request in writing, but failure by Bank to comply with any such request shall not of itself be deemed a failure to exercise reasonable care, and no failure by Bank to preserve or protect any right with respect to such Collateral against prior parties, or to do any act with respect to the preservation of such Collateral not so requested by a Borrower, shall of itself be deemed a failure to exercise reasonable care in the custody or preservation of such Collateral.

### 10.5   Reliance by Bank.

All covenants, agreements, representations and warranties made herein by a Borrower shall, notwithstanding any investigation by Bank, be deemed to be material to and to have been relied upon by Bank.

### 10.6   Parties.

Whenever in this Agreement there is reference made to any of the parties hereto, such reference shall be deemed to include, wherever applicable, a reference to the successors and permitted assigns of Borrowers and the participants, successors and assigns of Bank, and the provisions of this Agreement shall be binding upon and shall inure to the benefit of said participants, successors and assigns. Notwithstanding anything herein to the contrary, no Borrower may assign or otherwise transfer its rights or obligations under this Agreement or any other Financing Agreement without the prior written consent of Bank. Without in any way limiting Bank's rights, Bank may sell participations in the Liabilities or sell or assign its rights hereunder and under the other Financing Agreements, in whole or in part, on such terms as Bank may determine. In connection with any such proposed participations or assignments, Bank may disclose information required to be kept confidential hereunder; provided such disclosure shall not be made unless the party to whom it is disclosed shall have agreed to keep such information confidential as set forth herein.

### 10.7   CHOICE OF LAW.

THIS AGREEMENT SHALL BE DEEMED TO BE EXECUTED AND HAS BEEN DELIVERED AND ACCEPTED IN DENVER, COLORADO. ANY DISPUTE BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF, CONNECTED WITH, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN OR AMONG THEM IN CONNECTION WITH THIS AGREEMENT, AND WHETHER ARISING IN CONTRACT, TORT, EQUITY, OR OTHERWISE, SHALL BE RESOLVED IN ACCORDANCE WITH THE INTERNAL LAWS AND NOT THE CONFLICTS OF LAW PROVISIONS OF THE STATE OF COLORADO.

10.8   CONSENT TO JURISDICTION.

(a)   EXCLUSIVE JURISDICTION. EXCEPT AS PROVIDED IN SECTION 10.8(b), BANK AND EACH BORROWER AGREE THAT ALL DISPUTES BETWEEN OR AMONG THEM ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN OR AMONG THEM IN CONNECTION WITH THIS AGREEMENT, AND WHETHER ARISING IN CONTRACT, TORT, EQUITY OR OTHERWISE, SHALL BE RESOLVED ONLY BY STATE OR FEDERAL COURTS LOCATED IN THE CITY AND COUNTY OF DENVER, COLORADO, AND EACH BORROWER AND BANK WAIVE ANY OBJECTION BASED ON VENUE OR FORUM NON CONVENIENS WITH RESPECT TO ANY ACTION INSTITUTED THEREIN, BUT BANK AND EACH BORROWER ACKNOWLEDGE THAT ANY APPEALS FROM THOSE COURTS MAY HAVE TO BE HEARD BY A COURT LOCATED OUTSIDE OF THE CITY AND COUNTY OF DENVER, COLORADO. EACH BORROWER WAIVES IN ALL DISPUTES ANY OBJECTION THAT IT MAY HAVE TO THE LOCATION OF THE COURT CONSIDERING THE DISPUTE.

(b)   OTHER JURISDICTIONS. EACH BORROWER AGREES THAT BANK SHALL HAVE THE RIGHT TO PROCEED AGAINST SUCH BORROWER OR ITS PROPERTY IN A COURT IN ANY LOCATION WHERE SUCH BORROWER OR ITS PROPERTY IS LOCATED WITH RESPECT TO ALL DISPUTES BETWEEN THEM ARISING OUT OF, CONNECTED WITH, RELATED TO OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS AGREEMENT, AND WHETHER ARISING IN CONTRACT, TORT, EQUITY OR OTHERWISE, AND TO ENABLE BANK TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE LIABILITIES, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER ENTERED IN FAVOR OF BANK. EACH BORROWER WAIVES ANY OBJECTION THAT IT MAY HAVE TO THE LOCATION OF THE COURT IN WHICH BANK HAS COMMENCED A PROCEEDING DESCRIBED IN THIS SECTION 10.8(b).

10.9   SERVICE OF PROCESS.

EACH BORROWER HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND IRREVOCABLY APPOINTS CT CORPORATION, AS SUCH BORROWER'S AGENT FOR THE PURPOSE OF ACCEPTING SERVICE OF PROCESS WITHIN THE STATE OF COLORADO. BANK AGREES TO PROMPTLY FORWARD BY CERTIFIED MAIL (NO RETURN RECEIPT REQUIRED) A COPY OF ANY PROCESS SO SERVED UPON SAID AGENT TO SUCH BORROWER AT ITS ADDRESS SET FORTH IN SECTION 10.16. EACH BORROWER HEREBY CONSENTS TO SERVICE OF PROCESS AS AFORESAID. EACH BORROWER FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OUT OF THE COURTS REFERRED TO IN SECTION 10.8 IN ANY SUCH ACTION OR PROCEEDING BY MAILING COPIES OF SUCH SERVICE BY CERTIFIED MAIL, POSTAGE PREPAID TO SUCH BORROWER AT SAID ADDRESS. NOTHING IN THIS AGREEMENT SHALL AFFECT THE RIGHT OF BANK TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW BUT ANY FAILURE TO

10.14  Section Titles.

Article, Section and subsection titles contained in this Agreement shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement among the parties. References to Articles, Sections, subsections, Exhibits, Schedules and the like, are to Articles, Sections and subsections of, or Exhibits or Schedules attached to, this Agreement unless otherwise expressly provided.

10.15  Continuing Effect.

This Agreement, the other Financing Agreements and Bank's security interest in and Lien on the Collateral shall continue in full force and effect so long as any Liabilities shall be owed to Bank, and (even if there shall be no Liabilities outstanding) so long as this Agreement has not been terminated as provided in Section 2.8.

10.16  Notices.

Except as otherwise expressly provided herein, any notice required or desired to be served, given or delivered hereunder shall be in writing, and shall be deemed to have been validly served, given or delivered (a) three (3) days after deposit in the United States mails, with proper postage prepaid, (b) when sent after receipt of confirmation or answerback if sent by telecopy, or other similar facsimile transmission, (c) one (1) Business Day after deposited with a reputable overnight courier with all charges prepaid, or (d) when delivered, if hand-delivered by messenger, all of which shall be properly addressed to the party to be notified and sent to the address or number indicated as follows:

| | |
|---|---|
| If to Bank at: | Fifth Third Bank<br>Structured Finance Group<br>1225 17th Street, Suite 2850<br>Denver, Colorado 80202<br>Attention: John D. Lundberg<br>Telecopy: (866) 359-5353<br>Confirmation: (303) 524-3513 |
| with courtesy copies to (which shall not constitute Notice for purposes of this Section 10.16): | Markus Williams Young & Zimmermann LLC<br>2750 Rasmussen Rd., Suite H-104<br>Park City, Utah  84098<br>Attn: Linda Zimmermann<br>Telecopy: (435) 214-3811<br>Confirmation: (435) 214-3806 |

|  |  |
|---|---|
| If to a Borrower at: | c/o Spring Communications Holding, Inc.<br>3939 South Wasatch Blvd., Suite 1<br>Salt Lake City, Utah 84124<br>Attention: Jason S. Ellis<br>Telecopy: (801) 278-7322<br>Confirmation: (801) 277-7777 |
| with courtesy copies to<br>(which shall not constitute<br>Notice for purposes of this<br>Section 10.16): | Holland & Hart LLP<br>222 South Main, Suite 2200<br>Salt Lake City, Utah 84101<br>Attention: Carl W. Barton<br>Telecopy: (801) 799-5700<br>Confirmation: (801) 799-5831 |

or to such other address or number as each party designates to the other in the manner herein prescribed. Any request for an accounting under Section 9-210 of the Code will not be deemed to have been received until actual receipt by Bank on a Business Day by an authorized employee of Bank.

10.17 Equitable Relief.

Each Borrower recognizes that, in the event any Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement or any other Financing Agreement (including the Liabilities), any remedy at law may prove to be inadequate relief to Bank; therefore, each Borrower agrees that Bank, if Bank so requests, shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages and the granting of any such relief shall not preclude Bank from pursuing any other relief or remedies for such breach.

10.18 Indemnification.

Each Borrower agrees, jointly and severally, to defend, protect, indemnify and hold harmless Bank and each of its Affiliates, officers, directors, managers, employees, attorneys, consultants and agents (collectively, the "Indemnitees") from and against any and all liabilities, obligations, losses, damages, penalties, actions, suits, proceedings, claims, disputes, judgments, costs, expenses and disbursements of any kind or nature whatsoever (including the fees, costs and disbursements of counsel (including reasonable attorneys' fees) for, and consultants of, such Indemnitees in connection with any investigative, administrative or judicial proceeding, whether or not such Indemnitees shall be designated a party thereto), which may be imposed on, incurred by, or asserted against such Indemnitees (whether direct, indirect, or consequential and whether based on any federal or state laws or other statutory regulations, including securities, environmental and commercial laws and regulations, under common law or at equitable cause or on contract or otherwise) in any manner relating to or arising out of this Agreement or any other Financing Agreement, or any act, event or transaction related or attendant thereto, the agreements of Bank contained herein or in any other Financing Agreement, the making of any Advance, the issuance of any Letter of Credit hereunder, the management of the Loans or the

IN WITNESS WHEREOF, this Loan and Security Agreement has been duly executed as of the day and year first above written.

| FIFTH THIRD BANK | SPRING COMMUNICATIONS HOLDING, INC. |
|---|---|
| By: /s/ John D. Lundberg<br>Name: John D. Lundberg<br>Its: Vice President | By: _____<br>Name: Jason S. Ellis<br>Its: President |
| SPRING COMMUNICATIONS - BLUE WIRE, INC. | SPRING COMMUNICATIONS DSW, INC. |
| By: _____<br>Name: Jason S. Ellis<br>Its: President | By: _____<br>Name: Jason S. Ellis<br>Its: President |
| SPRING COMMUNICATIONS - ILLINOIS, INC. | SPRING COMMUNICATIONS MNP, INC. |
| By: _____<br>Name: Jason S. Ellis<br>Its: President | By: _____<br>Name: Jason S. Ellis<br>Its: President |
| SPRING COMMUNICATIONS NEVADA, INC. | SPRING COMMUNICATIONS, INC. |
| By: _____<br>Name: Jason S. Ellis<br>Its: President | By: _____<br>Name: Jason S. Ellis<br>Its: President |
| SPRING COMMUNICATIONS - TEXAS, INC. | SPRING COMMUNICATIONS IDAHO, INC. |
| By: _____<br>Name: Jason S. Ellis<br>Its: President | By: _____<br>Name: Jason S. Ellis<br>Its: President |

Signature Page to Loan and Security Agreement