EXHIBIT E

# STOCK PURCHASE AGREEMENT

among

## SPRING COMMUNICATIONS HOLDING, INC.,
## MERGENCE CORPORATION
and
## GAMESTOP CORP.

dated as of

October 17, 2013

# TABLE OF CONTENTS

**ARTICLE I** DEFINITIONS ..................................................................................................... 1

**ARTICLE II** PURCHASE AND SALE .................................................................................. 6
Section 2.01 Purchase and Sale. ................................................................................................ 6
Section 2.02 Purchase Price. ..................................................................................................... 6
Section 2.03 Closing. ................................................................................................................ 7
Section 2.04 Working Capital Adjustment. .............................................................................. 7
Section 2.05 EBITDA Adjustment. .......................................................................................... 8

**ARTICLE III** REPRESENTATIONS AND WARRANTIES OF SELLER ............................ 8
Section 3.01 Authority of Seller. ............................................................................................... 8
Section 3.02 Organization, Authority and Qualification of the Company. ............................... 9
Section 3.03 Capitalization. ...................................................................................................... 9
Section 3.04 Subsidiaries. ....................................................................................................... 10
Section 3.05 No Conflicts; Consents. ..................................................................................... 10
Section 3.06 Financial Statements. ......................................................................................... 11
Section 3.07 Absence of Certain Changes, Events and Conditions. ....................................... 12
Section 3.08 Material Contracts. ............................................................................................. 13
Section 3.09 Title to Assets; Real Property. ........................................................................... 15
Section 3.10 Intellectual Property ........................................................................................... 15
Section 3.11 Insurance. ........................................................................................................... 16
Section 3.12 Legal Proceedings; Governmental Orders. ........................................................ 16
Section 3.13 Compliance With Laws; Permits. ...................................................................... 16
Section 3.14 Employee Benefit Matters. ................................................................................ 17
Section 3.15 Employment Matters .......................................................................................... 18
Section 3.16 Taxes. ................................................................................................................. 19
Section 3.17 Environmental Matters. ..................................................................................... 20
Section 3.18 Telecommunications Matters ............................................................................ 21
Section 3.19 Acquired Retail Stores ....................................................................................... 21
Section 3.20 Affiliate Transactions. ........................................................................................ 22

Section 3.21 Indebtedness..........................................................................................................22

Section 3.22 Brokers..................................................................................................................23

Section 3.23 No Other Representations and Warranties............................................................23

**ARTICLE IV** REPRESENTATIONS AND WARRANTIES OF BUYER ................................23

Section 4.01 Organization and Authority of Buyer. ..................................................................23

Section 4.02 No Conflicts; Consents. ........................................................................................23

Section 4.03 Investment Purpose. ..............................................................................................24

Section 4.04 Brokers. .................................................................................................................24

Section 4.05 Sufficiency of Funds. ............................................................................................24

Section 4.06 Legal Proceedings. ................................................................................................24

Section 4.07 Independent Investigation. ....................................................................................24

Section 4.08 No Other Representations and Warranties. ..........................................................25

**ARTICLE V** COVENANTS ......................................................................................................25

Section 5.01 Conduct of Business Prior to the Closing. ............................................................25

Section 5.02 Access to Information. ..........................................................................................25

Section 5.03 Resignations. .........................................................................................................26

Section 5.04 Exclusivity. ...........................................................................................................26

Section 5.05  Non-Competition; Non-Solicitation; Non-Interference. ......................................26

Section 5.06  Confidentiality. ....................................................................................................27

Section 5.07  Governmental Approvals and Other Third-Party Consents. ...............................27

Section 5.08 Books and Records. ..............................................................................................28

Section 5.09  Closing Conditions...............................................................................................28

Section 5.10 Public Announcements. ........................................................................................29

Section 5.11 Further Assurances. ..............................................................................................29

Section 5.12 Loss Shares. ..........................................................................................................29

Section 5.13 Tax Sharing Agreements.......................................................................................29

Section 5.14 Straddle Period......................................................................................................29

Section 5.15 Tax Periods Ending on or before Closing Date ....................................................29

Section 5.16 Cooperation on Tax Matters .................................................................................30

Section 5.17 Transfer Taxes. ...30
Section 5.18 Refunds; Carrybacks. ...30
**ARTICLE VI** CONDITIONS TO CLOSING ...30
Section 6.01 Conditions to Obligations of Buyer. ...30
Section 6.02 Conditions to Obligations of Seller. ...32
**ARTICLE VII** INDEMNIFICATION ...32
Section 7.01 Survival. ...32
Section 7.02 Indemnification by Seller ...33
Section 7.03 Recovery from Escrow Fund. ...33
Section 7.04 Exclusive Remedy; Limitations on Recovery. ...34
Section 7.05 Distribution of Escrow Fund. ...35
Section 7.06 Indemnification Procedures. ...35
Section 7.07 Tax Treatment of Indemnification Payments. ...36
**ARTICLE VIII** TERMINATION ...37
Section 8.01 Termination. ...37
Section 8.02 Effect of Termination. ...37
**ARTICLE IX** MISCELLANEOUS ...38
Section 9.01 Expenses. ...38
Section 9.02 Notices. ...38
Section 9.03 Interpretation. ...39
Section 9.04 Headings. ...39
Section 9.05 Severability. ...39
Section 9.06 Entire Agreement. ...40
Section 9.07 Successors and Assigns. ...40
Section 9.08 No Third-Party Beneficiaries. ...40
Section 9.09 Amendment and Modification; Waiver. ...40
Section 9.10 Governing Law; Waiver of Jury Trial. ...40
Section 9.11 Counterparts; Facsimile. ...41
Section 9.12 Legal Representation. ...41

## STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (this "**Agreement**"), dated as of October 17, 2013, is entered into among Spring Communications Holding, Inc., a Delaware corporation (the "**Company**"), Mergence Corporation, a Delaware corporation ("**Seller**"), and GameStop Corp., a Delaware corporation (the "**Buyer**").

### RECITALS

WHEREAS, Seller owns all of the issued and outstanding shares of common stock, $0.001 par value per share (the "**Shares**"), of the Company; and

WHEREAS, Seller wishes to sell to Buyer, and Buyer wishes to purchase from Seller, the Shares, subject to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
### DEFINITIONS

The following terms have the meanings specified or referred to in this **Article I**:

"**2014 Audited Financial Statements**" has the meaning set forth in **Section 2.05**.

"**2014 Adjusted EBITDA**" has the meaning set forth in **Section 2.05**.

"**2014 Adjusted EBITDA Statement**" has the meaning set forth in **Section 2.05**.

"**Acquired Business**" means any business or operations Company or any of its Subsidiaries acquires (whether in the form of a purchase of assets, stock, merger or otherwise).

"**Acquired Retail Stores**" means all retail facilities acquired by the Company or any of its Subsidiaries during the three (3) year period prior to the date of this Agreement, or hereafter acquired prior to the Closing by the Company or any of its Subsidiaries, whether owned or leased, including all leases relating to such retail facilities, any rights under any contract relating to the lease, occupancy, use or maintenance of any retail stores or facilities, and all inventory used or useable in the Company's or any of its Subsidiaries' retail business (wherever located). For the avoidance of doubt, "Acquired Retail Stores" shall include all retail facilities acquired by the Company or any of its Subsidiaries from (i) Affordable Portables, Inc. and (ii) Cartronix, Inc. to the extent hereafter acquired (whether by merger, consolidation, stock or asset purchase or any other manner) by the Company pursuant to an acquisition agreement entered into prior to the Closing or pursuant to an acquisition consummated within 10 days following the Closing.

"**Adjusted EBITDA**" means earnings before interest, income taxes, depreciation, and amortization, and after the "Mergence Allocation" (as described in the Financial Statements), as determined in accordance with GAAP consistently applied and applied in accordance with the Company's historical practice excluding (i) all extraordinary, unusual, infrequent or nonrecurring items of gain or loss; (ii) revenues and other financial results from the acquisition of an Acquired Business prior to its acquisition by the Company or any of its Subsidiaries; and (iii) any prepayment penalties and similar fees incurred by Buyer, the Company or its Subsidiaries at or following the Closing. For the avoidance of doubt, all costs and expenses associated with the acquisition of an Acquired Business, including all fees and accrued interest on funds used to

acquire any such Acquired Business at the Company's borrowing rate, shall be a reduction to Adjusted EBITDA.

"**Affiliate**" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"**Agency Agreements**" has the meaning set forth in **Section 3.08(a)(ii)**.

"**Agreement**" has the meaning set forth in the preamble.

"**Ancillary Agreements**" mean, collectively, the Escrow Agreement, the Employment Arrangements, the Services Agreement Assignment and all other agreements, certificates, instruments, documents and writings delivered in connection with this Agreement.

"**Audited Financial Statements**" has the meaning set forth in **Section 3.06**.

"**Balance Sheet**" has the meaning set forth in **Section 3.06**.

"**Balance Sheet Date**" has the meaning set forth in **Section 3.06**.

"**Benefit Plan**" has the meaning set forth in **Section 3.14(a)**.

"**Business Day**" means any day except Saturday, Sunday or any other day on which commercial banks located in Salt Lake City, Utah are authorized or required by Law to be closed for business.

"**Buyer**" has the meaning set forth in the preamble.

"**Claim**" has the meaning set forth in **Section 7.03(c)**.

"**Closing**" has the meaning set forth in **Section 2.03**.

"**Closing Date**" has the meaning set forth in **Section 2.03**.

"**Closing Date Working Capital Amount**" has the meaning set forth in **Section 2.04**.

"**Closing Date Working Capital Statement**" has the meaning set forth in **Section 2.04**.

"**Code**" means the Internal Revenue Code of 1986, as amended, and the rules and regulations thereunder.

"**Commission Statement**" has the meaning set forth in **Section 3.18(a)**.

"**Common Stock**" has the meaning set forth in **Section 3.03(a)**.

"**Company**" has the meaning set forth in the preamble.

"**Company Intellectual Property**" has the meaning set forth in **Section 3.10(b)**.

"**Confidentiality Agreement**" means the Mutual Nondisclosure Agreement, dated as of September 20, 2013, between Buyer and the Company.

"**Direct Claim**" has the meaning set forth in **Section 7.06(c)**.

2

## ARTICLE IX
### MISCELLANEOUS

**Section 9.01   Expenses.** Whether or not the Closing takes place, and except as otherwise expressly provided herein (including **Section 5.17** hereof), all costs and expenses, including fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses; *provided, however*, that any expenses of the Company or any of its Subsidiaries incurred in connection with this Agreement and the transactions contemplated hereby shall be the sole responsibility of Seller.

**Section 9.02   Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand; (b) on the first Business Day after mailed if sent for overnight delivery by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the third Business Day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this **Section 9.02**):

If to the Company:	Spring Communications Holding, Inc.
3939 Wasatch Boulevard, Suite 1
Salt Lake City, Utah 84124
Facsimile:   (801) 278-7322
E-mail: jellis@springmobile.com

If to Seller:	Mergence Corporation
3939 Wasatch Boulevard, Suite 1
Salt Lake City, Utah 84124
Facsimile:   (801) 278-7322
E-mail: jellis@springmobile.com

with a copy (which shall not
constitute notice) to:	Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Facsimile:   801-799-5700
E-mail: glindley@hollandhart.com
Attention:   Gregory E. Lindley

If to Buyer:	GameStop Corp.
625 Westport Parkway
Grapevine, TX 76051
Facsimile: 817-424-2820
E-mail: RobLloyd@gamestop.com
Attention: Rob Lloyd
Chief Financial Officer

38

with a copy (which shall not constitute notice) to:

Bryan Cave LLP
1290 Avenue of the Americas
New York, NY 10104
Facsimile: (212) 541-1418
E-mail: jmdorman@bryancave.com
Attention: Jay M. Dorman

and

GameStop Corp.
600 Willowbrook Lane, Suite 622
West Chester, PA 19382
Facsimile: 484-991-1944
E-mail: DanKaufman@gamestop.com
Attention: Daniel J. Kaufman
    Senior Vice President, General
    Counsel and Secretary

**Section 9.03   Interpretation.** For purposes of this Agreement: (a) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to Articles, Sections, Disclosure Schedules and Exhibits mean the Articles and Sections of, and Disclosure Schedules and Exhibits attached to, this Agreement; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms. References to a Person are also to its permitted successors and assigns. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Disclosure Schedules and Exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**Section 9.04   Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 9.05   Severability.** If any term or provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above individually or by their respective officers thereunto duly authorized.

SIMPLY MAC, INC.

By: _____
Name: Steven B. Bain
Title: President

MERGENCE CORPORATION

By: _____
Name: Jason S. Ellis
Title: Director

STEVE BAIN

_____

TYLER DICKMAN

_____

KENT FORSGREN

_____

KENT THOMAS

_____

[Signature Page to Stock Purchase Agreement]