# Exhibit D

Royce B. Covington (10160)
J. Mason Kjar (14227)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone:   (801) 532-7840
Facsimile:   (801) 532-7750
rcovington@parrbrown.com
mkjar@parrbrown.com
*Attorneys for Q Advisors, LLC*

---

## IN THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| MERGENCE CORPORATION, dba SPRING RETAIL GROUP, a Delaware corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Q ADVISORS LLC, a Colorado limited liability company,<br><br>    Defendant. | **DECLARATION OF JOHN S. PHILLIPS FILED AS PART OF Q ADVISORS' REPLY IN SUPPORT OF MOTION TO STAY**<br><br><br>Civil No. 150901798<br><br>Judge James Gardner |

I, John S. Phillips, hereby declare as follows:

1.      I am over 21 years of age, have personal knowledge of the matters stated herein, and am in all respects competent to make this declaration.

2.      I am a partner at the law firm of Bartlit Beck Herman Palenchar & Scott LLP in Denver, Colorado.

3.      I represent Q Advisors, LLC in a matter filed in state court in the City and County

of Denver, Colorado titled *Q Advisors v. Mergence Corp.*, No. 2015CV30955 (Colo. Dist. Ct., Mar. 17, 2015).

      4.     Attached hereto are true and correct copies of the following exhibits which I refer to below:

      a.    Exhibit A is a true and correct copy of my March 2, 2015 letter, which I sent via overnight Federal Express to Mergence Corporation and its officers Jason S. Ellis, Brett M. Bradshaw, and Vernon G. Dickman at 3939 South Wasatch Boulevard, Suite 1, Salt Lake City, Utah 84124.

      b.    Exhibit B is a true and correct copy of an email I sent to Mergence's counsel on March 17, 2015.   Attached to the email was a copy of the complaint I filed on behalf of Q Advisors in state court in Colorado earlier that day.

      c.    Exhibit C is a true and correct copy of the State of Delaware's Certificate for Renewal and Revival of Charter of Mergence Corporation, dated March 18, 2015.

      d.    Exhibit D is a true and correct copy of an email I sent to Mergence's counsel on March 18, 2015 attaching the Court's Delay Reduction Order setting deadlines in the Colorado case I had filed the day before.

      e.    Exhibit E is a true and correct copy of an email I sent to Mergence's counsel on March 19, 2015.   Attached to the email was an Acceptance of Service form.

      f.    Exhibit F is a true and correct copy of an email I received on March 23,

2015 from Mergence's counsel responding to my inquiry concerning service.

g.   Exhibit G is a true and correct copy of an email I sent to Mergence's counsel on March 26, 2015 concerning service.

5.   My law firm obtained information about Mergence Corporation prior to filing the Colorado lawsuit.   We discovered multiple "Mergence" entities, including an expired Mergence Corporation in Nevada and an expired Mergence Corporation in Delaware.   At the time we filed the March 17, 2015 Complaint, we believed the Nevada entity was the Mergence entity referred to in the contract between Mergence and Q Advisors.

6.   On March 2, 2015, I prepared a letter, which I sent via overnight Federal Express, to Mergence Corporation and its officers Jason S. Ellis, Brett M. Bradshaw and Vernon G. Dickman at 3939 South Wasatch Boulevard, Suite 1, Salt Lake City, Utah 84124.   (*See* Ex. A.) I received confirmation from Federal Express that the letter was delivered and signed for as received on March 3, 2015.

7.   On Friday, March 13, 2015, counsel for Mergence (Jim Kruse at the law firm of Kruse Landa Maycock & Ricks located in Salt Lake City, Utah) left me a voicemail saying he could discuss the matter "the first of next week."   I called Mr. Kruse on Monday, March 16, 2015 and spoke with him and another lawyer at the firm, Steven G. Loosle.   They asked me to send them a draft copy of Q Advisors' complaint against Mergence.

8.   On March 17, 2015, I filed the complaint in Colorado State Court and immediately sent a copy of the filed complaint to Mr. Kruse.   (*See* Ex. B.)   The complaint

3

listed Mergence Coproration (domiciled in Nevada) and Mr. Ellis as parties.   I offered to hold

off serving the complaint if Mergence wished to first discuss the matter.   (*Id.*)

9.     Unbeknownst to me, Mergence filed the instant action in Utah State Court on

March 18, 2015, a day after I emailed Mr. Kruse a copy of the complaint filed in Colorado on

March 17, 2015.

10.     Also unbeknownst to me at the time, Mergence renewed its expired corporate

charter in the State of Delaware that same evening at 6:37 P.M.   (*See* Ex. C.)   The renewal

form is signed by Mr. Dickman, the same individual listed as an officer of the Mergence-Nevada

and one of the individuals to whom I had addressed the letter referenced in paragraph 6 above.

11.     In the meantime, I discussed service of the Colorado Complaint with Mergence's

counsel.   (*See* Exs. D–G.)   I exchanged emails and telephone calls to discuss the matter of

service with Mr. Loosle on March 18, 19, 23, and 26.   (*See id.*)

a.     On March 18, I emailed Mr. Loosle a copy of the Delay Reduction Order

issued by the Court in Colorado, which explains that civil courtrooms are on

a delay reduction docket and sets various deadlines.   (*See* Ex. D.)

b.     On March 19, I called Mr. Loosle and asked if he would accept service for

Mergence.   Mr. Loosle stated that he would voluntarily accept service of

the Colorado Complaint on behalf of his clients.   I emailed Mr. Loosle a

copy of the Acceptance of Service for his signature and notarization.   (*See*

Ex. E.)

c.     Mr. Loosle did not respond until March 23.   He indicated Mergence was in

4

the process of retaining local counsel in Colorado.    In his response, he responded to my further inquiry about the Acceptance of Service of the Colorado Complaint by saying "I will sign it when admitted and return it to you, or more likely, I will have local counsel sign it when we firm up retention since that will happen more quickly."   (*See* Ex. F.)

  d.   I followed up with Mr. Loosle via email on March 26 asking "Can you please give me an update?"   (*See* Ex. G.)   Mr. Loosle did not respond.

12.   Instead of accepting service, Mr. Loosle entered his appearance in the Colorado case on March 30 and filed Mergence's Motion to Dismiss based on lack of personal jurisdiction.

13.   Mergence did not advise me of the existence of the Utah complaint until March 30, 2015.

  I declare under penalty of perjury under the laws of the State of Colorado that the foregoing statements are true and correct to the best of my knowledge.

    EXECUTED on May 29, 2015.

_____
John S. Phillips

# Exhibit A
Letter to Mergence dated March 2, 2015
Regarding Q Advisors' Claims

# BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
www.bartlit-beck.com

DENVER OFFICE

1899 WYNKOOP STREET
8TH FLOOR
DENVER, CO 80202
TELEPHONE: (303) 592-3100
FACSIMILE: (303) 592-3140

CHICAGO OFFICE

COURTHOUSE PLACE
54 WEST HUBBARD STREET
CHICAGO, IL 60610
TELEPHONE: (312) 494-4400
FACSIMILE: (312) 494-4440

WRITER'S DIRECT DIAL:
(303) 592-3199
john.phillips@bartlit-beck.com

March 2, 2015

**BY FEDERAL EXPRESS**

Mergence Corporation (dba Spring Retail Group)
3939 South Wasatch Boulevard, Suite 1
Salt Lake City, Utah 84124

Jason S. Ellis
3939 South Wasatch Boulevard, Suite 1
Salt Lake City, Utah 84124

Brett M. Bradshaw
3939 South Wasatch Boulevard, Suite 1
Salt Lake City, Utah 84124

Vernon G. Dickman
3939 South Wasatch Boulevard, Suite 1
Salt Lake City, Utah 84124

  Re: Q Advisors' Debt

Dear Mergence Corporation and Messrs. Ellis, Bradshaw, and Dickman:

  We represent Q Advisors LLC.

  As you know, on January 18, 2013, Mergence (dba Spring Retail Group) entered into the attached contract with Q Advisors.  Q Advisors acted as Spring's investment bank in connection with Spring's July 2013 debt transaction.

  The contract required Mergence to "negotiate in good faith a new engagement letter" if Spring was sold at any time within 36 months.  Spring was sold for approximately $97 million in enterprise value in November 2013.  Mergence never contacted Q Advisors about a new engagement letter, and Mergence did not enter into any engagement letter with Q Advisors concerning the Spring sale.  Mergence therefore breached the contract, and Q Advisors has been damaged in an amount in excess of $1 million.

  We have recently learned that (a) Mergence failed to comply with Nevada corporate law from 2009 on, (b) Mergence was not legally permitted to transact business in January 2013 when Mr. Ellis signed the contract with Q Advisors, and (c) Mergence had not been permitted to transact business for a period of several years before that under applicable law.  To the extent Spring sale proceeds or other assets have been improperly taken out of Mergence, applicable law provides for personal liability to Mergence's directors, Mergence's shareholders, or both.  Each of Messrs. Ellis, Bradshaw, and Dickman are Mergence directors and shareholders.

Letter to Mergence Corporation and Messrs. Ellis, Bradshaw, and Dickman
Page 2


      We have prepared a Complaint.  Please contact me, or ask your attorney to contact me, at your earliest convenience (and no later than March 13, 2015) to try to resolve this matter short of litigation.

                                     Sincerely,

                                     John S. Phillips



**Q Advisors**
An Investment Banking Partnership

**ENGAGEMENT LETTER**

January 18, 2013

Mr. Jason Ellis
Chief Executive Officer
Mergence Corporation (dba Spring Retail Group)
3939 South Wasatch Boulevard
Suite 1
Salt Lake City, UT 84124

Dear Jason:

Pursuant to our recent discussions, I am pleased to confirm the arrangements under which Mergence Corporation (dba Spring Retail Group). ("Mergence" or the "Company") will engage Q Advisors LLC ("Q Advisors") to provide financial advisory services on an exclusive basis (the "Services"), to the Company in connection with a private placement to qualified institutional buyers of (a) senior debt securities (including revolving or term bank debt, hereinafter referred to as "Senior Debt"); or (b) debt securities that combine Senior Debt and Junior Debt into an integrated instrument (including unitranche debt, hereinafter referred to as "Blended Debt"). Together or independently, the private placement of Senior Debt or Blended Debt is hereinafter referred to as the "Financing".

1. **Retention.** During the term of our engagement, Q Advisors will provide the Company with a range of Services in connection with the Financing, including advice and assistance with respect to defining funding objectives and approaching potential investors. More specifically, in connection with the proposed Financing, Q Advisors will (a) assist the Company in developing and preparing its business plan and strategy, (b) identify and contact, on a best-efforts basis, potential financing sources, (c) work with the Company to prepare marketing materials describing the Company and the Financing, (d) recommend transaction structures and prepare or comment on term sheets, (e) assist in setting negotiation strategies and in conducting negotiations as reasonably requested by the Company, (f) review transaction documents, and (g) attend meetings of the Board of Directors or stockholders of the Company when requested.

   The Company shall have final determination over any information and strategies developed by Q Advisors. In providing the Services, Q Advisors acknowledges that all terms and conditions of any Financing shall be subject to the approval of the Company's management or the Board of Directors of the Company, including, but not limited to, the type of security and the institutional investors that participate.

   During the term of this letter agreement, the Company shall promptly refer any potential investors who approach the Company concerning a Financing to Q Advisors, and Q Advisors will then become the primary point of contact with any such investors.

Mr. Jason Ellis                                                                                  *Confidential*
January 18, 2013

2.  **Fees and Expenses.**  As we discussed, in consideration of the Services rendered to the Company under this letter agreement, the Company shall pay Q Advisors a monthly fee (the "Retainer") of $10,000, billed in advance (partial months will be pro rated accordingly) and payable within 10 days of receipt of invoice.

On consummation of the Financing, the Company shall pay Q Advisors a fee (the "Financing Fee") equal to (a) two percent (2.0%) of the Value of the Senior Debt; plus (b) two and three-quarters percent (2.75%) of the Value of the Blended Debt.  For purposes of this letter agreement, Value shall mean the face amount of debt (without deducting fees or expenses) raised by the Company from third parties in connection with the Financing.  Furthermore, Value shall include any amounts committed to by the investor(s) but unused or undrawn at closing.  However, if Prudential Capital (or an affiliate thereof) is the largest investor in the Senior Debt or Blended Debt, the Financing Fee will be reduced by ten percent (10.0%).

If the Financing closes, Q Advisors shall receive a Financing Fee of not less than $475,000 (the "Minimum Fee"), except, however, if Prudential Capital (or affiliates thereof) is the largest investor in the Financing, in which case the Minimum Fee will be $425,000.  All Retainer payments shall be credited against and reduce the Financing Fee.

In addition, whether or not the Financing closes, the Company will reimburse Q Advisors, on a monthly basis, for reasonable and documented out-of-pocket expenses incurred by Q Advisors in connection with this letter agreement.  Typically, these expenses may include travel, lodging, telephone and outside services incurred by Q Advisors.  In no event shall Q Advisors incur any single expense in excess of $2,000 without the prior consent of the Company.  Q Advisors anticipates that monthly reimbursable expenses will not be greater than $4,000, and it will make a good-faith effort to promptly alert Mergence, if it expects expenses to exceed that level.

3.  **Termination.**  Services hereunder may be terminated with or without cause by either party at any time on 30 days' written notice and without liability or continuing obligation to the other (except for any compensation earned and expenses incurred by Q Advisors to the date of termination, including without limitation Financing Fees and except, in the case of termination by the Company for any reason other than the material breach of this agreement by Q Advisors, for Q Advisors' right under the "tail" provisions described immediately hereafter in this Section 3).  After termination of Q Advisors' engagement for any reason other than the material breach by Q Advisors, Q Advisors will provide the Company with a true and correct list of parties with whom Q Advisors, on Mergence's behalf, has been in contact regarding the Financing ("Tail List").  If, within twelve (12) months following the termination of Q Advisors' engagement, the Company (a) closes a Financing or (b) (i) enters into a Letter of Intent, Memorandum of Understanding, or substantially similar agreement (even if such agreement is non-binding) describing key terms and conditions of a Financing and (b) (ii) closes a Financing with that same entity, or an affiliate thereof (whether or not that closing occurs within the twelve (12) months referenced above) **and** the Financing is with any party who is on the Tail List, Q Advisors shall be entitled, as applicable, to the Financing Fee as set forth above. Notwithstanding any termination of this letter agreement, the numbered paragraphs **2, 3, 5, 6 and 15** herein will remain operative regardless of any such termination.

4.  **Independent Contractor.**  Q Advisors will act under this letter agreement as an independent contractor with duties solely to the Company, and nothing herein shall be construed as creating any other relationship between the Company and Q Advisors hereto including, but not limited to, partnership, agency or joint venture.  The relationship between Q Advisors and the Company under this letter agreement shall be solely that of consultant and client.  The Company, its agents, employees, representatives or affiliates shall under no circumstance be deemed agents or

Mr. Jason Ellis                                                                                    *Confidential*
January 18, 2013

representatives of Q Advisors.  Neither Q Advisors nor its agents, employees, representatives or affiliates, shall be deemed for any purpose to be employees of the Company.  Furthermore, it is understood that Q Advisors is being engaged hereunder solely to provide the Services described above to the Company and that Q Advisors is not acting as an agent or fiduciary of, and shall have no duties or liability to, the directors or equity holders of the Company or any other third party in connection with its engagement hereunder, all of which are expressly waived.  Any purchases of securities from, or other transactions involving, the Company shall be effected by the Company.  Q Advisors and its employees, agents and representatives shall have no authority to bind the Company.  Q Advisors understand that the Company may modify, suspend, terminate or withdraw entirely any Financing transaction or efforts to pursue such a transaction at any time.

5.  **General Indemnity.**  The Company agrees to indemnify Q Advisors and its members, directors, officers, agents and employees (each, an "Indemnified Party") of and from any losses, actions, claims, damages or liabilities (or actions in respect thereof) resulting from any claim raised by a third party relating to or arising out of the performance of the Services noted hereunder, other than the gross negligence or wilful misconduct by an Indemnified Party, and will reimburse the Indemnified Party hereunder for all expenses (including reasonable attorneys' fees and expenses) reasonably incurred by the Indemnified Party in connection with investigating, preparing or defending any such action or claim.  The Company agrees that neither Q Advisors nor any Indemnified Party shall have any liability to the Company for or in connection with this engagement except for any such liability for losses, actions, claims, damages, liabilities or expenses incurred by the Company that result from Q Advisors' gross negligence or wilful misconduct.  In the event that an indemnifiable claim arises hereunder, the Indemnified Party shall give prompt written notice of the claim to the Company and the Company shall have the right to assume the defense of such claim provided that there is no conflict of interest between the Company, on the one hand, and the Indemnified Party on the other hand.  The Company will not settle any action by a third party against any Indemnified Party relating to this engagement without securing appropriate releases or other protection for such Indemnified Party.  No Indemnified Party will settle any action without the consent of the Company, which consent shall not be unreasonably withheld.

If the indemnification provided for in the preceding paragraph shall for any reason be unavailable to an otherwise Indemnified Party, then the Company shall, in lieu of indemnifying such Indemnified Party, contribute to the amount paid or payable by such Indemnified Party (a) in such proportion as shall be appropriate to reflect the relative benefits received by the Company on the one hand and Q Advisors on the other from the engagement or the Financing or (b) if the allocation provided by clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company on the one hand and Q Advisors on the other with respect to the conduct or omission which resulted in a loss, action, claim, damage or liability, or action in respect thereof, as well as any other relevant equitable considerations.  The relative benefits received by the Company on the one hand and Q Advisors on the other with respect to the Financing shall be deemed to be in the same proportion as the aggregate consideration or value received by the Company in the Financing (as the same may be reduced by damages incurred as a result thereof) bears to the Financing Fee received by Q Advisors under this letter agreement.  Under no circumstances shall Q Advisors or any Indemnified Party be liable for any indirect, consequential, incidental, special, punitive or exemplary damages arising from any losses, actions, claims, damages or liabilities (or actions in respect thereof) resulting from any claim raised by a third party relating to or arising out of the performance of the Services, regardless of whether Q Advisors has been apprised of the likelihood of such damages occurring.

In the event the Company requests that Q Advisors deliver certain documents and information relating to this engagement via electronic transmissions, the Company acknowledges and agrees that

Mr. Jason Ellis                                                            *Confidential*
January 18, 2013

the privacy and integrity of electronic transmissions cannot be guaranteed due to the possibility that third parties could intercept, view or alter such electronic transmissions. To the extent that any documents or information relating to this engagement are transmitted electronically, the Company agrees to release Q Advisors from any loss or liability incurred in connection with the electronic transmission of any such documents and information, including the unauthorized interception, alteration or fraudulent generation and transmission of electronic transmissions by third parties. Under no circumstances shall Q Advisors be liable for any ordinary, direct, indirect, consequential, incidental, special, punitive or exemplary damages arising out of the foregoing, regardless of whether Q Advisors has been apprised of the likelihood of such damages occurring.

6. **Reliance on Information; Confidentiality.** The Company understands and confirms (a) that Q Advisors will be using and relying on data, material and information about the Company furnished to Q Advisors by the Company, its employees and representatives and (b) that Q Advisors does not assume responsibility for independently verifying such information. The Company hereby represents and warrants to Q Advisors that the information furnished by the Company for the purposes contemplated by this letter agreement will not contain any untrue statement of a material fact or omit to state any material fact necessary to make statements therein not misleading.

Any advice or opinions provided by Q Advisors may not be disclosed or referred to publicly or to any third party except in accordance with Q Advisors' prior written consent, which shall not be unreasonably withheld or denied, or as required by law or regulation. Q Advisors acknowledges that all information about the Company, its business, operations and customers that Q Advisors and its representatives learn in any way and from any source as a result of this letter agreement constitutes a trade secret, or is confidential or proprietary to the Company (the "Confidential Information"). Q Advisors shall receive and hold such Confidential Information in confidence, shall hold the same in trust, shall not disclose or furnish the same to any third party without the Company's prior written consent, and shall not use the same for any purpose other than the performance of its obligations under this letter agreement or otherwise in direct connection with the operation of this letter agreement. Notwithstanding the foregoing, Confidential Information shall not encompass information about the Company that is or becomes publicly available through no fault of Q Advisors', is already lawfully in Q Advisors' possession, is independently developed by Q Advisors, or is legitimately and lawfully obtained by Q Advisors from third parties not under obligations of confidentiality to the Company.

Upon termination of this letter agreement, Q Advisors shall return or, at the discretion of the Company, destroy all the Company's Confidential Information in its care, custody or control that is capable of being retrieved for such purpose(s) without undue burden to Q Advisors, with the exception of any materials required to be kept for FINRA or other regulatory purposes.

Q Advisors acknowledges that the Confidential Information under this letter agreement constitutes unique, valuable and special trade secret and business information of the Company, and that disclosure may cause irreparable injury to the Company. Accordingly, Q Advisors agrees that the remedy at law for any breach of the covenants contained in this paragraph 6 may be inadequate, and in recognition, agrees that the Company shall, in addition, be entitled to seek injunctive relief without bond including reasonable attorneys' fees and other court costs and expenses, in the event of a breach or threatened breach of the provisions of this paragraph 6, which relief shall be in addition to and not in derogation of any other remedies which may be available to the Company as a result of such breach.

7. **Notices.** Notice given pursuant to any of the provisions of this letter agreement shall be in writing and shall sent by overnight delivery by an internationally recognized delivery company or hand-

Mr. Jason Ellis                                                                *Confidential*
January 18, 2013

delivered (a) to the Company at the address set forth above, to the attention of Mr. Jason Ellis, and (b) to Q Advisors at 1899 Wynkoop Street, Ste. 200, Denver, Colorado 80202, Attention: Mr. Michael Crawford. Parties may change the foregoing addresses with a prior written notice to the other party.

8. **Construction**. This letter agreement shall be governed by and construed in accordance with the laws of the State of Utah as applied to contracts made and performed in such State, exclusive of Utah's choice of law provisions.

9. **Severability**. Any determination that any provision of this letter agreement may be, or is, unenforceable shall not affect the enforceability of the remainder of this letter agreement.

10. **Headings**. The paragraph headings in this letter agreement have been inserted as a matter of convenience of reference and are not part of this letter agreement.

11. **Counterparts**. This letter agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument. This letter agreement may be executed by facsimile.

12. **Third Party Beneficiaries**. This letter agreement has been and is made solely for the benefit of the Company and Q Advisors and their respective successors and permitted assigns, and no other person shall acquire or have any right under or by virtue of this letter agreement.

13. **Modification**. This letter agreement may not be modified, amended or assigned except in writing, duly executed by the parties hereto.

14. **Announcements**. It is understood that if a Financing is completed, Q Advisors will be entitled, at its expense, to place an announcement in such publications and mailings as Q Advisors desires, stating that Q Advisors has acted as financial advisor to the Company in connection with the Financing. Any such announcements shall be subject to the Company's approval, which shall not be unreasonably withheld or delayed.

15. **Future Sale or Recapitalization**. In the event that Mergence elects to pursue a sale or recapitalization of the Company, whether while this letter is in effect or within thirty six (36) months of its termination, Q Advisors and Mergence shall negotiate in good faith a new engagement letter under which Q Advisors would be the Company's exclusive financial advisor for that assignment/transaction. The intent of both parties would be to agree to terms of an engagement that are commercially reasonable and that, when taken as a whole, are not materially inconsistent with those available at the time from investment banks or other organizations with experience and qualifications substantially similar to those of Q Advisors.

Mr. Jason Ellis                                                          *Confidential*
January 17, 2013
           18

If the terms of our engagement as set forth in this letter are satisfactory, kindly sign the enclosed copy of this letter agreement and return it to us.  We look forward to working with the Company on this assignment.

Very truly yours,

Q ADVISORS LLC, a Colorado limited liability company

By:        Q Consulting & Advisors Inc., Manager

By:        _____

           Michael Crawford, Vice President


Accepted:

By:        _____

Title:     _____

Date:      _____

# Exhibit B

Email sent March 17, 2015
to Counsel for Mergence

| | |
|---|---|
| **From:** | John Phillips <john.phillips@bartlit-beck.com> |
| **Sent:** | Tuesday, March 17, 2015 10:50 AM |
| **To:** | James Kruse |
| **Subject:** | Q Advisors Complaint |
| **Attachments:** | 20150317 Civil Cover Sheet - as filed.pdf; 20150317 Complaint Against Mergence -- as filed.pdf; 20150317 Exhibit A to Complaint - Contract.pdf; 20150317 Summons - as filed.pdf |

Mr. Kruse,

You asked for copies of the Complaint.

Attached is the Complaint and related documents we have filed.

As I indicated yesterday and in my letter over two weeks ago, my client welcomes a discussion about resolving this matter without going forward with litigation.  If you and your clients are interested in that, please let me know right away.  If we are not on a path to resolving this promptly, we will go ahead and formally serve the Complaint later this week.  In that regard, please confirm that you are authorized to accept service and I will send you the simple form that accomplishes that.

Thanks.


John S. Phillips
Counsel for Q Advisors LLC


_____

John S. Phillips | Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
(P) 303-592-3199 | (F) 303-592-3140
john.phillips@bartlit-beck.com | www.bartlit-beck.com
This message may contain confidential or privileged information.  If it has been sent to you in error, please reply to advise the sender of the error, and then immediately delete this message.

# Exhibit C
Mergence's Certificate for
Renewal of Corporate Charter

MAR/18/2015/WED 04:52 PM                FAX No.                        P. 002/006

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 06:37 PM 03/18/2015*
*FILED 06:37 PM 03/18/2015*
*SRV 150377820 – 2182017 FILE*

# STATE OF DELAWARE
# CERTIFICATE FOR RENEWAL
# AND REVIVAL OF CHARTER

The corporation organized under the laws of the State of Delaware, the charter of which was voided for non-payment of taxes and/or for failure to file a complete annual report, now desires to procure a restoration, renewal and revival of its charter pursuant to Section 312 of the General Corporation Law of the State of Delaware, and hereby certifies as follows:

1.      The name of the corporation is Mergence Corporation

2.      The Registered Office of the corporation in the State of Delaware is located at Corporation Trust Center    1209 Orange St                          (street), in the City of Wilmington                , County of New Castle Zip Code 19801              . The name of the Registered Agent at such address upon whom process against this Corporation may be served is The Corporation Trust Company                                                    .

3.      The date of filing of the Corporation's original Certificate of Incorporation in Delaware was 12/21/1988                                                      .

4.      The renewal and revival of the charter of this corporation is to be perpetual.

5.      The corporation was duly organized and carried on the business authorized by its charter until the 01         day of March                  A.D. 2015, at which time its charter became inoperative and void for non-payment of taxes and/or failure to file a complete annual report and the certificate for renewal and revival is filed by authority of the duly elected directors of the corporation in accordance with the laws of the State of Delaware.

By: _Vern Dickman_ (signature)
                    Authorized Officer

Name: Vern Dickman
                    Print or Type

# Exhibit D

Email sent March 18, 2015
to Counsel for Mergence

| | |
|---|---|
| **From:** | John Phillips <john.phillips@bartlit-beck.com> |
| **Sent:** | Wednesday, March 18, 2015 12:12 PM |
| **To:** | sloosle@klmrlaw.com |
| **Subject:** | FW: Q Advisors Complaint |
| **Attachments:** | 20150317 Delay Reduction Order.pdf |

Steve,

I understand from Jim¹s message that you will be getting back to me.

In the meantime, attached is a Delay Reduction Order the Court issued yesterday.

John

---

**From:** James Kruse <JKruse@klmrlaw.com>
**Date:** Tuesday, March 17, 2015 at 1:27 PM
**To:** John Phillips <john.phillips@bartlit-beck.com>
**Cc:** Steve Loosle <SLoosle@klmrlaw.com>
**Subject:** RE: Q Advisors Complaint

Thanks.

Steve Loosle from my firm will be getting back to you.

Jim



James R. Kruse
Attorney at Law
Kruse Landa Maycock & Ricks, LLC
136 East South Temple
Twenty-First Floor
Salt Lake City, UT 84111

Telephone  801-531-7090
Direct Facsimile 801-531-7091

www.klmrlaw.com

Kruse Landa Maycock & Ricks, LLC is a member of MSI, an association of independent legal and accounting firms.

The information contained in this e-mail message is legally privileged and/or confidential information intended only for the receipt by and use of the individual or entity to whom or which it is addressed.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this message in error, please immediately notify us by telephone and delete this message from your computer.   Thank you.

As required by United States Treasury Regulations, you should be aware that this communication is not intended or written by the sender to be used, and it cannot be used, by any recipient for the purpose of avoiding penalties that may be imposed on the recipient under United States federal tax laws.

**From:** John Phillips [mailto:john.phillips@bartlit-beck.com]
**Sent:** Tuesday, March 17, 2015 10:51 AM
**To:** James Kruse
**Subject:** Q Advisors Complaint

Mr. Kruse,

You asked for copies of the Complaint.

Attached is the Complaint and related documents we have filed.

As I indicated yesterday and in my letter over two weeks ago, my client welcomes a discussion about resolving this matter without going forward with litigation.  If you and your clients are interested in that, please let me know right away.  If we are not on a path to resolving this promptly, we will go ahead and formally serve the Complaint later this week.  In that regard, please confirm that you are authorized to accept service and I will send you the simple form that accomplishes that.

Thanks.

John S. Phillips
Counsel for Q Advisors LLC

_____

John S. Phillips | Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
(P) 303-592-3199 | (F) 303-592-3140
john.phillips@bartlit-beck.com | www.bartlit-beck.com
This message may contain confidential or privileged information.  If it has been sent to you in error, please reply to advise the sender of the error, and then immediately delete this message.

# Exhibit E
Email sent March 19, 2015
to Counsel for Mergence

| | |
|---|---|
| **From:** | John Phillips <john.phillips@bartlit-beck.com> |
| **Sent:** | Thursday, March 19, 2015 5:02 PM |
| **To:** | sloosle@klmrlaw.com |
| **Subject:** | Acceptance of Service |
| **Attachments:** | 20150319 Acceptance of Service.pdf |

Steve,

As we just discussed, attached is a form confirming that you accept service on behalf of Mergence and Mr. Ellis.  Please note that this should be notarized.

Thanks.

John

_____

**John S. Phillips | Bartlit Beck Herman Palenchar & Scott LLP**
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
(P) 303-592-3199 | (F) 303-592-3140
john.phillips@bartlit-beck.com | www.bartlit-beck.com
This message may contain confidential or privileged information.  If it has been sent to you in error, please reply to advise the sender of the error, and then immediately delete this message.

# Exhibit F
Email sent March 23, 2015
to Counsel for Q Advisors

| | |
|---|---|
| **From:** | Steve Loosle <SLoosle@klmrlaw.com> |
| **Sent:** | Monday, March 23, 2015 2:57 PM |
| **To:** | John Phillips |
| **Subject:** | RE: Acceptance of Service |

John:

Thanks for your prompt response.

We are in the process of retaining local counsel.  I don't think I can sign this until I am admitted in Colorado for this case.  I will sign it when admitted and return it to you, or more likely, I will have local counsel sign it when we firm up retention since that will happen more quickly.

Regards,

Steven G. Loosle
Attorney at Law
Kruse Landa Maycock & Ricks, LLC
136 East South Temple
Twenty-First Floor
Salt Lake City, UT 84111

Telephone  801-531-7090

Kruse Landa Maycock & Ricks, LLC is a member of MSI, a network of independent professional firms.

The information contained in this e-mail message is legally privileged and/or confidential information intended only for the receipt by and use of the individual or entity to whom or which it is addressed.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this message in error, please immediately notify us by telephone and delete this message from your computer.   Thank you.

**From:** John Phillips [mailto:john.phillips@bartlit-beck.com]
**Sent:** Thursday, March 19, 2015 5:02 PM
**To:** Steve Loosle
**Subject:** Acceptance of Service

Steve,

As we just discussed, attached is a form confirming that you accept service on behalf of Mergence and Mr. Ellis.  Please note that this should be notarized.

Thanks.

John

_____

John S. Phillips | Bartlit Beck Herman Palenchar & Scott LLP

1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
(P) 303-592-3199 | (F) 303-592-3140
john.phillips@bartlit-beck.com | www.bartlit-beck.com
This message may contain confidential or privileged information.  If it has been sent to you in error, please reply to advise the sender
of the error, and then immediately delete this message.

# Exhibit G
Email sent March 26, 2015
to Counsel for Mergence

| | |
|---|---|
| **From:** | John Phillips <john.phillips@bartlit-beck.com> |
| **Sent:** | Thursday, March 26, 2015 3:08 PM |
| **To:** | Steve Loosle |
| **Subject:** | Re: Acceptance of Service |

Steve,

Can you please give me an update?

Thanks.

John

**From:** Steve Loosle <SLoosle@klmrlaw.com>
**Date:** Monday, March 23, 2015 at 2:56 PM
**To:** John Phillips <john.phillips@bartlit-beck.com>
**Subject:** RE: Acceptance of Service

John:

Thanks for your prompt response.

We are in the process of retaining local counsel.  I don't think I can sign this until I am admitted in Colorado for this case.  I will sign it when admitted and return it to you, or more likely, I will have local counsel sign it when we firm up retention since that will happen more quickly.

Regards,

Steven G. Loosle
Attorney at Law
Kruse Landa Maycock & Ricks, LLC
136 East South Temple
Twenty-First Floor
Salt Lake City, UT 84111

Telephone  801-531-7090

Kruse Landa Maycock & Ricks, LLC is a member of MSI, a network of independent professional firms.

The information contained in this e-mail message is legally privileged and/or confidential information intended only for the receipt by and use of the individual or entity to whom or which it is addressed.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this message in error, please immediately notify us by telephone and delete this message from your computer.  Thank you.

**From:** John Phillips [mailto:john.phillips@bartlit-beck.com]
**Sent:** Thursday, March 19, 2015 5:02 PM

**To:** Steve Loosle
**Subject:** Acceptance of Service

Steve,

As we just discussed, attached is a form confirming that you accept service on behalf of Mergence and Mr. Ellis.  Please note that this should be notarized.

Thanks.

John

_____
John S. Phillips | Bartlit Beck Herman Palenchar & Scott LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
(P) 303-592-3199 | (F) 303-592-3140
john.phillips@bartlit-beck.com | www.bartlit-beck.com
This message may contain confidential or privileged information.  If it has been sent to you in error, please reply to advise the sender of the error, and then immediately delete this message.